## RED STAR TOWING & TRANSPORTATION CO. v. WOODBURN.

(Circuit Court of Appeals, Second Circuit. March 7, 1927.)

No. 200.

1. **Navigable waters** &#9901;&#8605;24—Owner of sunken barge had duty of marking wreck within reasonable time after learning thereof; "navigable channel" (Comp. St. §§ 9920, 9924).

Under Act March 3, 1899, § 15 (Comp. St. § 9920), read together with section 19 (Comp. St. § 9924), owner of barge, which was sunk just off main channel, had duty, as soon as he learned of wreck, of marking it, since phrase "navigable channel" in section 15 (Comp. St. § 9920) does not confine that duty to deeper channels marked by buoys and used by large vessels.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Navigable.]

2. **Navigable waters** &#9901;&#8605;24—Tugs do not share in barge owner's duty to mark wreck.

Tugs do not share in liability of barge owner to mark wreck, whatever their fault for causing it.

3. **Navigable waters** &#9901;&#8605;24—Tug, negligently sinking vessel, is not liable to subsequent craft, which may foul wreck.

Tug which negligently sinks a vessel is not liable to subsequent craft, which may foul wreck, either for failing to mark it or because second collision was proximate consequence of first fault.

4. **Navigable waters** &#9901;&#8605;24—Recovery by tug fouling wreck may not be limited to half damages, because wreck was originally caused by tug owner's negligence (Comp. St. § 9920).

Recovery by tug fouling wreck, which was not marked as required by Act March 3, 1899, § 15 (Comp. St. § 9920), may not be limited to half damages because wreck was originally caused by tug owner's negligence, since after the sinking a new duty arises, demanding as its condition fact and notice thereof to wreck owner, who thereupon has duty of marking wreck, and tug is absolved from subsequent consequences.

Appeal from the District Court of the United States for the Eastern District of New York.

Suit by the Red Star Towing & Transportation Company against Robert Woodburn. Decree for libelant for half damages only, and both parties appeal. Reversed and rendered.

Appeal from a decree of the District Court for the Eastern District of New York, holding the respondent liable for half damages on a libel in personam for failure to mark a wreck. The libelant appealed because of the court's failure to award full damages.

This case is a companion to Woodburn v. The Portchester and The Priscilla, 18 F.(2d) 75, decided herewith, and arose from the same disaster. The barge Hayward sank on Saturday, October 21, 1922, between 6 and 6:30 a. m., just off the main easterly channel of Hell Gate, from 250 to 300 feet northeast of the red buoy, marking the east side of the Middle Ground between the Sunken Meadow and Lawrence Point. She had reached here in tow of the tug Portchester, which was attempting to beach her after causing her inju-

ries through a defective hawser, as appears at length in the other case.

At about 9 o'clock of the same day the libelants, owners of the Portchester, told the respondent, upon information from their own tug master, that she had sunk somewhere east of Sunken Meadow, to which they later added that the place was 1,000 feet east of Sunken Meadow and off Port Morris. The respondent asked the libelants whether they would look after the boat and buoy it, to which they replied that this was useless, as she was in 80 or 90 feet of water. At about half past 10 of the same day the respondent's bargee came into his office and told him that the barge had sunk about 400 feet east of the red buoy, and thereafter during the same morning the respondent called up the Lighthouse Department, told them that his barge had sunk east of the red buoy and near it; that he did not know the location, and could not give the depth of water. He added, "They are attempting to locate the wreck now, and, if found, will mark it themselves," and he asked the department to take no action until further notified. He did nothing further to find the barge until Monday, the 23d, after the collision now in question. On that morning the Stamford, another tug of the libelants, was towing the barge Joe through the same channel. The master had been advised of the sinking of the Hayward on the Saturday before, and supposed that the wreck had been buoyed. Being on the watch for the buoy, and knowing nothing more than the general whereabouts of the wreck, he navigated west of the east main channel, and the Joe collided with the sunken Hayward. The libel was brought to recover the resulting damages.

The District Judge held the respondent at fault for failing to mark the wreck, but charged the libelants with half damages for failing to give proper information as to its whereabouts.

Burlingham, Veeder, Masten & Fearey, of New York City (Chauncey I. Clark and C. B. Manley O'Kelley, both of New York City, of counsel), for Red Star Towing Co.

Horace L. Cheyney and Macklin, Brown, Lenahan & Speer, all of New York City, for Woodburn.

Robert S. Erskine, Henry P. Elliott, and Kirlin, Woolsey, Campbell, Hickox & Keating, all of New York City, for the Priscilla and another.

Before MANTON, HAND, and SWAN, Circuit Judges.

HAND, Circuit Judge (after stating the facts as above). [1] Woodburn's liability seems to us well established. His duty arose as soon as he learned of the wreck, and its liability after a reasonable time in which to take action. The Anna M. Fahy, 153 F. 866 (C. C. A. 2); The Macy, 170 F. 930 (C. C. A. 2). We cannot agree that the phrase "navigable channel" in section 15 of the act of 1899 (chapter 425 [Comp. St. § 9920]) confines that duty to those deeper channels marked by buoys and used by large vessels. After making unlawful the failure of the owner to mark the wreck, the section enacts that, in case he does not proceed to remove it, his failure shall constitute an abandonment and subject the wreck to removal "as hereinafter provided for." These words refer to section 19 (Comp. St. § 9924), which enacts that any craft sunk in navigable waters, so as to endanger navigation, shall be removed by the Secretary of War after 30 days, or earlier, if abandonment can be proved. It seems plain that the failure to remove, which constitutes abandonment under section 15, is a failure for 30 days under section 19 (People's Coal Co. v. Second Pool Coal Co. [D. C.] 181 F. 609, 612, affirmed 188 F. 892 [C. C. A. 3]), and that the two sections are to be read together. It is, of course, still possible to say that sunken craft, which endanger navigation, but lie outside a navigable channel, are to be removed, though not abandoned, and that abandonment is important only when wrecks lie in channels, but that is an extremely whimsical construction of the act.

Section 15 seems to have been interpolated in the act of 1899 as an additional provision to section 8 of the act of 1890 (chapter 907 [26 Stat. 454]), which was expanded into section 19. The scope of the earlier enactment was preserved in section 19, but we think it unlikely that, when the new section was added, the change in its expression indicated a change in purpose. It would certainly be an unreasonable and capricious result which should limit the wreck owner's duty to marked channels, and exonerate him from responsibility elsewhere, though his craft, as it lay, equally endangered navigation. There is no warrant for distinguishing the two phrases, and every reason, despite their form, for treating them as equivalents. We think they are.

That Woodburn had opportunity to mark the wreck seems to us amply proved. We accept the testimony of Lawton, of the Lighthouse Department, that Woodburn told him

on Saturday that the wreck was near to, and east of, the red buoy, and this confirms the bargee's own version that he told Woodburn that it lay about 400 feet east of it. With that information the department would have undertaken at once to locate and mark the wreck, and while we cannot, of course, know that it would have succeeded before Monday, Woodburn cannot succeed on the chance that it would not. Not only did he do nothing, but he directed the department to do nothing, though, had he told them to proceed, he would have been absolved. The Plymouth, 225 F. 483 (C. C. A. 2). We can only attribute this direction to his desire to save expense, coupled with his expectation, entirely unwarranted, so far as we can see, that the tugs would do the work for him.

[2] As to the libelants' liability, we differ with the learned District Judge. It must be remembered that the tugs do not share in the duty to mark the wreck, whatever their fault for causing it. The Anna M. Fahy, 153 F. 866 (C. C. A. 2); The R. J. Moran, 299 F. 500 (C. C. A. 2). The libelants were therefore not liable for failing to secure more information than they had, nor were they responsible that that information turned out to be misleading. They reported what they had· from the master, and were not charged with getting more, or with the truth of·what they did get, in the absence of deceit, which is not suggested.

[3, 4] So far as we know, this is the first case in which the libelant is the same party which has suffered by the very wreck which his own negligence occasioned, and at first blush it appears that he should bear his part of the ensuing loss, to which he so contributed. However, a tug which negligently sinks a vessel is not liable to subsequent craft which may foul the wreck, either for failing to mark it, or because the second collision is a proximate consequence of the first fault. A tugowner is no more responsible for the eventual collision, when he himself suffers from his earlier fault, than when another is the victim. The statute establishes a new duty arising after the sinking, and demanding as its condition nothing but the fact and notice of it to the wreck owner. Though the tug be a guilty party to the original mishap, the duty is not ordinarily upon her to provide against further loss; the statute imposes the duty upon the owner alone, and absolves the tug from subsequent consequences, which conceivably might otherwise be thought to be the proximate result of her original fault.

This does not mean that the tug is ·not charged with knowledge of her own deed, or that her owner needs in every instance the warning which the statute accords mariners at large. A tug which should collide with a wreck of her own creation could scarcely complain, if she knew its location; but in that she would be on a parity with any other vessel similarly advised. It would be her knowledge of the wreck's position that charged her, not her complicity in the sinking. In the case at bar the libelants knew no more than what the Portchester's master had told them; they assumed, quite properly, that Woodburn would take the initiative in fixing and marking its position, at least within 48 hours. Their other tugmaster, in charge of the Stamford, had been told of the wreck and knew its general whereabouts; but he was quite within his·duty when, on Monday morning, while passing the locus in quo, he was on the watch for the buoy which should have been in place, and not for a wreck, which he had no adequate means of avoiding. Nor can we say that the libelants should either have declined to send their tows through the thoroughfare, or even that they should have inquired of Woodburn whether he had discharged his statutory duty. The second course would, indeed, have been the more cautious; but we will not say that it was obligatory.· Once in the Gate with a tow, the Stamford's master had no choice to turn back, when he could not find a buoy. He was then forced to pick his way as best he could, and his mischance resulted altogether from Woodburn's failure to do his duty.

Decree reversed, and libelant awarded full damages.