**Glenn D. GREER, Individually, and as owner of the F/V MARIBO, Plaintiff-Appellant-Cross Appellee,**

v.

**UNITED STATES of America, Defendant-Appellee-Cross Appellant.**

No. 74–1864
**Summary Calendar.***

United States Court of Appeals,
Fifth Circuit.

Dec. 13, 1974.

---

* Rule 18, 5 Cir., See Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al., 5 Cir., 1970, 431 F.2d 409, Part I.

Joseph P. Milton, Jacksonville, Fla., for plaintiff-appellant-cross-appellee.

John L. Briggs, U. S. Atty., Manuel Menendez, Jr., Asst. U. S. Atty., Jacksonville, Fla., David V. Hutchinson, Stephen F. Eilperin, Attys., U. S. Dept. of Justice, Washington, D. C., for defendant-appellee-cross-appellant.

Before BELL, SIMPSON and MORGAN, Circuit Judges.

PER CURIAM:

This appeal follows a judgment in favor of Glenn Greer, owner of the fishing vessel MARIBO, for damages occasioned when the vessel collided with the south jetty at the entrance to the St. Johns River. The court found that the Coast Guard was negligent in failing to properly maintain a buoy marking the south jetty and that its negligence caused this incident to occur. The United States denies it was negligent and contends that appellant Greer was contributorily negligent. Greer, of course, agrees with the court's decision and challenges only the

propriety of the damage award, $20,000 for loss of his vessel.

The pertinent facts begin late in the day on February 8, 1973, when Greer was fishing some 60 miles northeast of the mouth of the St. Johns River in the Atlantic Ocean. Upon hearing that northeast storm conditions were predicted for the next day, Greer decided to return home. The MARIBO, accompanied by the F/V DORBESS, left for port early the next morning and arrived off the mouth of the St. Johns around 9:30 the evening of February 9.

Before proceeding into the river, Mr. Stoddard, master of the DORBESS, was advised that buoy 6, the north jetty buoy, had moved south of its charted position. The pilot boat operator advised the DORBESS that proceeding would be safe if it entered with buoy 6 on its port side. The MARIBO proceeded inshore passing buoy 7, the south jetty buoy on its port side and Greer turned the wheel to port intending to pass buoy 6 on his port side. The jetties were completely submerged by the northeaster condition of the seas. About the time Greer turned his wheel to port, his vessel's bow struck the south jetty rocks causing extensive damage to the hull and eventual total loss of the vessel.

The evidence revealed that buoy 7 was some 500 feet south of its charted position and this discrepancy from its charted position accounted for the fact that the MARIBO hit the south jetty. Displacement of Buoy 7 had occurred before. Coast Guard records show that it was found off its charted position four times from October, 1968 to April, 1972. The court heard testimony from the Coast Guard Chief of the Aids to Navigation Branch to the effect that the normal procedure for correcting a buoy found off its charted position several times is to add additional weight to give the buoy more stability. Despite the fact that an available Coast Guard vessel, the cutter SWEETGUM, was equipped to handle the additional weights and that such weights were available nearby, buoy 7 had not had the benefit of this procedure. Additional testimony established that a recommendation had been made to relocate buoy 7 so that even in extreme weather conditions it would not drift south. The recommendation resulted in only a slight relocation, leaving buoy 7 in generally the same area as before.

 Given this factual basis, the court found that the Coast Guard was negligent. Since it had exercised its discretion to place a buoy marking the jetty location it had a duty to properly maintain it, including taking reasonable steps necessary to keep it on station once it had been discovered that it was not staying on station. Indian Towing Company v. United States, 1955, 350 U. S. 61, 76 S.Ct. 122, 100 L.Ed. 48. The government argues that *Indian Towing* places only an alternate duty on the Coast Guard, namely, to either properly maintain its equipment or to properly warn of a malfunction. We do not read *Indian Towing* as authority for absolving the Coast Guard of its duty to correct a potentially dangerous condition merely by giving notice that such a condition exists, although adequate warning may absolve the Coast Guard from liability in particular situations. See, e. g., De Bardeleben Marine Corp. v. United States, 5 Cir. 1971, 451 F.2d 140. Furthermore, we are not convinced that the warning which the government argues should be adequate here, is sufficient to relieve it of the responsibility to correct the recurrent dislocation of buoy 7. The burden the government carries in attacking the findings of the district court has not been met; adequate evidentiary support in the record and a correct view of the law compel our affirmance of the court's action in this regard. Chaney v. City of Galveston, 5 Cir. 1966, 368 F.2d 774.

 The government also objects because the court did not find Greer to be contributorily negligent. It contends Greer had other aids to navigation available to him and was on notice buoys 6

and 7 might be off station. While evidence exists in the record to help support the government's position, substantial evidence also indicates it was prudent for Greer to attempt to enter the St. Johns River rather than remain at sea. It is not our function to retry the case but rather to decide whether the district court's determination that Greer was not contributorily negligent has an adequate evidentiary basis. Smith v. United States, 5 Cir. 1961, 287 F.2d 299. That determination here is not clearly erroneous.

The sole remaining issue concerns the sufficiency of the damage award. Finding of Fact #16 was as follows:

> The Plaintiff bought the F/V "MARI-BO" in November, 1970, for a total consideration of approximately $8,000.-00. At that time the vessel was in fairly poor condition. Thereafter, particularly during 1972, the Plaintiff made extensive structural improvements to the hull, ribs, decking, housing, etc. and installed various items of equipment, such as replacing the engine, radio, loran system, etc. These improvements cost approximately $12,-000.00, *excluding the Plaintiff's considerable labors involved in effectuating the structural repairs and installing the equipment,* along with the labors of several of his friends. He further testified that the fair market value of his vessel immediately prior to the accident was between $40,000.00 and $45,000.00 (emphasis supplied)

Based thereon Greer was awarded damages in the amount of $20,000. Greer asserts that it was error for the lower court to consider only his out of pocket expenses without also considering the value of the extensive labors it found he performed on the vessel in repairing it. We agree.

The amount of damages sustained by a party is a question of fact and a trial court's findings of damages are not to be disturbed unless clearly erroneous. Union Oil Co. of California v. Tug Mary Malloy, 5 Cir. 1969, 414 F.2d 669; Neal v. Saga Shipping Co., S.A., 5 Cir. 1969, 407 F.2d 481; F.R.Civ.P. 52(a). The Supreme Court stated in a landmark admiralty case, McAllister v. United States, 1954, 348 U.S. 19, 20, 75 S.Ct. 6, 8, 99 L.Ed. 20: ". . . [A] finding is clearly erroneous when 'although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' (cited cases omitted)" We are left with such a conviction here.

Whenever a vessel is lost as a result of a maritime collision, damages are customarily determined by a finding as to the vessel's market value immediately preceding the collision. See Standard Oil Co. v. Southern Pacific Co., 1925, 268 U.S. 146, 45 S.Ct. 465, 69 L. Ed. 890; Delta Marine Drilling Co. v. M/V Baroid Ranger, 5 Cir. 1972, 454 F. 2d 128. In situations where market value cannot readily be established, the court should consider any and all evidence before it to establish a fair valuation. See Carl Sawyer, Inc. v. Poor, 5 Cir. 1950, 180 F.2d 962. Having rejected *sub silentio* the only testimony before it as to market value, the plaintiff's estimate of $40,000 to $45,000, the court erred when it excluded consideration of the fair value of Greer's extensive personal labor in repairing the vessel. The judgment of the lower court is reversed as to damages only. We remand for a recomputation of the damages award, including the fair value of Greer's labor.

Reversed and remanded.