**Walter Douglas NUNLEY, Plaintiff,**

**v.**

**M/V DAUNTLESS COLOCOTRONIS, her engines, tackle, apparel, etc., and 364,321 Barrels of Arabian Light Crude Oil in rem, Defendants.**

**Civ. A. No. 77–3886.**

United States District Court, E. D. Louisiana.

April 20, 1981.

Charles Hanemann, Henderson, Hanemann & Morris, Houma, La., for Tenneco Oil Co.

Debra J. Kossow, Washington, D. C., for United States.

Fred E. Salley, New Orleans, La., for Combi Lines.

Alex F. Lankford, III, G. Hamp Uzzelle, III, Mobile, Ala., for Dravo Mechling.

Machale A. Miller, New Orleans, La., for Point Landing, Inc.

J. Walter Ward, Jr., New Orleans, La., for Zito Fleeting, Inc. & Zito Towing, Inc.

Lemle, Kelleher, Kohlmeyer & Matthews, W. E. Noel, New Orleans, La., for Walter Douglas Nunley.

McGlinchey, Stafford & Mintz, John E. Galloway, New Orleans, La., for Tenneco Oil Co.

CASSIBRY, District Judge:

## MOTION FOR JUDGMENT ON THE PLEADINGS

This motion raises the intriguing question whether the negligent parties responsible for the sinking of a vessel can be made responsible for the damage resulting from subsequent collisions with the sunken wreck. In particular, it raises the question of the effect of the Wreck Act,[1] a statute recently described in a Fifth Circuit opinion as "impossibly obscure",[2] upon an already complicated tortious causation problem. I conclude that notwithstanding its drafting handicaps, the Wreck Act does relieve the negligent non-owners of responsibility for any subsequent collisions with the wreck.

The tortured chain of events in this case began on or about January 16, 1974 when there was a major breakaway of barges at locations along the east and west banks of

Alfred M. Farrell, Jr., Hugh R. Straub, Terriberry, Carroll, Yancey & Farrell, New Orleans, La., for Sea Unity Shipping, S.A.

---

1. 33 U.S.C. § 401 et seq. (1970) (originally enacted as Act of Mar. 3, 1899, ch. 425, 30 Stat. 1151 et seq.). Sections 15, 16, 19 and 20, 33 U.S.C. §§ 409, 411, 414, and 415 are collectively known as the Wreck Act. Section 15 of the Wreck Act hereinafter is referred to according to its place in the Rivers and Harbors Act, 33 U.S.C. § 409.

2. *University of Texas Medical Branch at Galveston v. United States*, 557 F.2d 438 (5th Cir. 1977).

the Mississippi River. As a result of this breakaway the Combi Lines Barge, CBLL–01315 (hereinafter referred to as the Combi barge) sank at approximately mile 88.4. On July 22, 1977 over three years later, the M/V Dauntless Colocotronis (hereinafter referred to as the Colocotronis) allegedly struck the Combi barge, resulting in a constructive total loss of the ship. The owners and operators of the Colocotronis filed a complaint against the United States and several of the upriver defendants including movants. They alleged that the negligent sinking of the Combi barge by the upriver defendants and/or the failure to mark or remove the barge by the United States led to the destruction of the Colocotronis. The owners and operators also filed a claim against Combi Lines in its limitation action alleging that it was responsible for the damage to the Colocotronis due to its ownership of the barge and its failure to mark or remove it. Finally, both Combi Lines and the United States brought claims against the upriver defendants for indemnity and/or contribution should judgment be entered against them in favor of the Colocotronis.

The upriver defendants have brought this motion for judgment on the pleadings on the ground that they are not responsible for the damage to the Colocotronis occasioned by the Colocotronis striking the Combi barge. They do not contest at this time the separate claim by the United States for reimbursement of expenses allegedly incurred in connection with marking and removing the Combi barge. Nor do they contest at this time Combi Lines' claim for the loss of its barge and the claim of the owner of the cargo on the barge arising from the original barge breakaway. Instead, for purposes of this motion they admit the well-pleaded averments of the United States and Combi Lines—i. e., that the upriver defendants negligently caused the sinking of the Combi barge which was later struck by the Colocotronis.[3]

3. The owners and operators of the Colocotronis do not oppose this motion.

4. The duty to mark includes the duty to make all reasonable efforts to find the wreck. *See*

Any consideration of this question must begin with an analysis of Section 15 of the Rivers and Harbors Act, 33 U.S.C. § 409, part of the Wreck Act, which specifically considers the problems of sunken vessels in navigable channels. It provides in relevant part:

> ... And whenever a vessel, raft or other craft is wrecked and sunk in a navigable channel, accidentally or otherwise, it shall be the duty of the owner of such sunken craft to immediately mark it with a buoy or beacon during the day and a lighted lantern at night, and to maintain such marks until the sunken craft is removed or abandoned, and the neglect or failure of the said owner so to do shall be unlawful; and it shall be the duty of the owner of such sunken craft to commence the immediate removal of the same, and prosecute such removal diligently, and failure to do so shall be considered as an abandonment of such craft, and subject the same to removal by the United States as provided for in sections 411 to 416, 418 and 502 of this title.

■ Although the Wreck Act itself is a criminal statute, Section 409 also represents a legislative determination of the standard of care placed on the owner of a wreck in a civil action. *Morania Barge No. 140, Inc. v. M. & J. Tracy, Inc.*, 312 F.2d 78 (2d Cir. 1962); *American Commercial Barge Line Company v. Eagle Marine Industries, Inc.*, 1977 A.M.C. 475 (E.D.Mo.1976). It clearly places the responsibility for marking and raising the sunken vessel on the owner of the vessel.[4] Sections 409 and 414 of the Wreck Act also charge the Coast Guard and the Corps of Engineers with certain duties and responsibilities with regard to marking and removing wrecks.

■ Although the language of Section 409 does not specifically relieve the party responsible for the original sinking of sub-

*Berwind-White Coal Company v. Pitney*, 187 F.2d 665 (2d Cir. 1951); *The Snug Harbor*, 40 F.2d 27 (4th Cir. 1930).

sequent damage occasioned by a later collision with the wreck, every court that has considered the issue since the inception of the Act has reached such a conclusion. *The Anna M. Fahy*, 153 Fed. 866 (2d Cir. 1907); *The R. J. Moran*, 299 Fed. 500 (2d Cir. 1924); *Red Star Towing & Transportation Co. v. Woodburn*, 18 F.2d 77 (2d Cir. 1927); *Lowery v. The Tug, Ellen S. Bouchard*, 128 F.Supp. 16 (N.D.N.Y.1955), *affd. on opinion of trial court*, 229 F.2d 436 (2d Cir. 1956); *American Commercial Barge Line Company v. Eagle Marine Industries, Inc.*, 1977 A.M.C. 475, *supra.* Those cases indicate that under the Wreck Act, the *only* relevant duty to the victim of a subsequent collision with a sunken wreck is the duty of the owner to mark and remove the wreck. The preceding breach of duty by the original tortfeasor which led to the sinking of the wreck is irrelevant for purposes of determining liability for the later accident.

In the *Anna M. Fahy, supra*, the canal boat FAHY sank at 9:30 a.m. when the tugs OVERBROOK and MEDIA negligently towed her upon the rocks. Subsequently, at 6:00 p.m. the same day, the tug BULLEY ran upon the sunken wreck, which had not been removed or marked, and was damaged. On these facts, the court exonerated the tugs and their owners that negligently caused the canal boat to sink, and held the canal boat's owner solely responsible for plaintiff's tow. In reaching this result the court observed that § 15 of the Wreck Act (subsequently codified as 33 U.S.C. § 409) placed the duty to mark and remove on the owner of the wreck. In construing the statute to exculpate the owners of the vessels responsible for wrecking the FAHY, the court stated:

> The Tugs Overbrook and Media are undoubtedly liable to the owner of the Fahy for their negligence in towing her upon the rocks, but are they liable to the Bulley for failure to mark the wreck? The district judge thought not and we are inclined to agree with him.
>
> The statute places the duty to mark upon the owner and no one else; there is no divided responsibility and, if the statute is to be effectual, there cannot be. *Id.* 153 F. at 867–68.

The court did discuss the possibility that under extraordinary circumstances the parties responsible for the sinking might have a duty to *mark* the wreck:

> We do not intend to hold that conditions may not arise where a duty is imposed upon a tug to mark a wreck caused by her negligence. It may well be, where all representatives of the owner are drowned or where communication with him is impossible from any cause, that a duty rests upon the tug to mark the wreck. No such situation arises in the case at bar. There was nothing to prevent the owner from marking the wreck; the tugs knew this and were justified in assuming that the owner would act as he was commanded to act by law. *Id.* at 868.

However, it never considered the possibility that in the absence of negligence by the owner to mark his vessel, the original tortfeasors would be held liable because of their responsibility *for the original sinking*.

In the *R. J. Moran, supra*, the factual situation was substantially more complex, but the legal holding pertinent to the present motion was the same. The scow 9–S, in tow of the tug R. J. Moran, collided with a steamship and sank. Fifteen minutes later, the tug J. C. Hartt struck the sunken scow and was damaged. The owner of the tug J. C. Hartt filed suit against the sunken scow and against the tug R. J. Moran. The owner of the scow impleaded the steamship and her tugs, and the owner of the tug R. J. Moran successfully petitioned for limitation of liability. The district court concluded that the R. J. Moran had been solely at fault for the collision and the sinking, and divided the limitation fund between the owner of the scow and the owner of the tug J. C. Hartt which struck the scow.

The Second Circuit affirmed the decree in favor of the owner of the J. C. Hartt against the owner of the scow, but reversed the judgment dividing the limitation fund for the tug R. J. Moran. The court held that the owner of the R. J. Moran, which

had negligently sunk the scow, was not liable to the owner of the tug J. C. Hartt which hit the scow after the sinking. The court concluded:

> It was not the duty of the tugs towing the [steamship] to mark the wreck of the sunken vessel. That obligation was placed by statute on the owner of the sunken craft. 30 Stat. 1152; Compiled Statutes, § 9920 [Now 33 U.S.C. § 409]. This court has held that duty is upon the owner and no one else, and that there is no divided responsibility; the reason being that, if the statute is to be effectual, there cannot be. *Id.* 299 Fed. at 503.

As in *Fahy*, the court discussed liability on the part of the Moran for the damage to the J. C. Hartt on account of some possible duty to *mark* the wreck when such action by the owner would have been impossible. Again, however, there is no suggestion in the opinion that the Moran would be held liable for the damage to the J. C. Hartt on account of its responsibility for the original sinking.[5]

Perhaps the most articulate expression of this interpretation of the Wreck Act came from Judge Learned Hand in *Red Star Towing & Transportation Co. v. Woodburn*, 18 F.2d 77, *supra*. The case presents an unusual coincidence in that the libelant, Red Star, which owned the tug Stamford which was towing the barge Joe when the barge Joe struck the sunken barge Hayward, was also the owner of the tug Portchester which had negligently sunk the barge Hayward two days before. The trial court had awarded the libelant only one-half of its provable damages after concluding that the libelant was at fault for failing to give proper information as to the whereabouts of the sunken barge Hayward.

The Second Circuit, in an opinion by Judge Hand, reversed and awarded the libelant full damages. In reaching his conclusion, Judge Hand clearly identified his reasoning:

As to the libelants' liability, we differ with the learned District Judge. It must be remembered that the tugs do not share in the duty to mark the wreck, whatever their fault for causing it. The libelants were therefore not liable for failing to secure *more information* than they had, nor were they responsible that that information turned out to be misleading. They reported what they had from the master, and were not charged with getting more, or with the truth of what they did get, in the absence of deceit, which is not suggested.

So far as we know, this is the first case in which the libelant is the same party which has suffered by the very wreck which his own negligence occasioned, and at first blush it appears that he should bear his part of the ensuing loss, to which he so contributed. *However, a tug which negligently sinks a vessel is not liable to failing to mark it, or because the second collision is a proximate consequence of the first fault.* A tugowner is no more responsible for the eventual collision, when he himself suffers from his earlier fault, than when another is the victim. The statute establishes a new duty arising after the sinking, and demanding as its condition nothing but the fact and notice of it to the wreck owner. Though the tug be a guilty party to the original mishap, the duty is not ordinarily upon her to provide against further loss; the statute imposes the duty upon the owner alone, and absolves the tug from subsequent consequences, which conceivably might otherwise be thought to be the proximate result of her original fault. 18 F.2d at 79. (Emphasis supplied; citation omitted).

*Red Star* clearly states that the *only proximate cause* of a collision between a sunken wreck and another vessel is the failure to mark. The prior negligence of the person responsible for the sinking is irrelevant. As the cases indicate, there are

---

5. In the present case the three and one half years between the sinking of the Combi barge and the subsequent collision rules out the possibility that the parties responsible for the sinking had an immediate duty to mark the wreck because the owner did not have time between the sinking and the collision to find and mark the wreck.

sound policy reasons for such an approach. By clearly designating a party responsible for the duty to mark and remove and making that responsibility the only relevant duty in the case of a subsequent collision, the statute encourages the expeditious marking and removal of wrecks. Unless that duty is placed firmly upon the owner (and in some instances the government) the parties involved will not act while they dispute who was responsible for the original sinking. The two subsequent cases interpreting § 409, like their predecessors, reflect this judgment and absolve the original tortfeasor of any responsibility for the subsequent collision.[6] *Lowery v. The Tug Ellen S. Bouchard, supra; American Commercial Barge Line Co. v. Eagle Marine Industries, Inc., supra.*

The United States and Combi Lines argue that the decision of the Supreme Court in *Wyandotte Transportation Co. v. United States*, 389 U.S. 191, 88 S.Ct. 379, 19 L.Ed.2d 407 (1967), and the decision of the Fifth Circuit in the University of Texas Medical Branch at *Galveston v. United States*, 557 F.2d 438, *supra*, alter the rule set out in the cases discussed above and make the prior tortfeasor liable for any damage resulting from its negligence in the original sinking. In *Wyandotte*, two consolidated cases were involved. In the first, the government sought a declaratory judgment that the allegedly negligent owners of two sunken barges were responsible for removing the barges from a navigable river. In the second, the government sought reimbursement for the costs of removing a sunken barge. It brought an in rem action against the sunken barge and its cargo and an in personam action against both the barge's owner and the negligent parties responsible for the barge's sinking. The district court granted summary judgment against the government's in personam suits

and held that the United States was limited to an in rem recovery against the sunken vessels and their cargoes. The Fifth Circuit reversed the trial judge, finding that the abandonment remedy is only available to non-negligent owners of vessels. The Supreme Court affirmed. It held that § 409 impliedly gave the government the right to bring an in personam action for the cost of removal against both negligent owners and non-owners of wrecks.

In *University of Texas Medical Branch at Galveston v. United States, supra,* the Fifth Circuit interpreted *Wyandotte* to "stand for the proposition that the United States must be afforded complete relief against the parties responsible for the sinking." *Id.* 557 F.2d at 447. Accordingly, it held that the Limitation of Liability Act does not apply to the right of the government to recover the cost of removing a wreck from the parties negligently responsible for the sinking.

Counsel for the United States and Combi Lines read *Wyandotte* and *University of Texas Medical Branch* for the general proposition that negligent sinkers of vessels should be held fully responsible for *all* the consequences of their action. In particular, they point to language in *Wyandotte*, reiterated in *Medical Branch*, that the denial of relief to the government "would permit the result, extraordinary in our jurisprudence, of a wrongdoer shifting responsibility for the consequences of his negligence onto his victim." *Wyandotte, supra,* at 204, 88 S.Ct. at 387. The United States and Combi Lines conclude that if the negligent parties responsible for the sinking of the vessel can be forced to pay for the removal of the vessel, they should also have to pay for the damage resulting from a later collision between the wreck and another vessel.

**6.** There is language in *American Commercial Barge* that the breach of duty on the part of the owner and another party "served to supercede" the original tortfeasor's negligence. This statement suggests that the original tortfeasor might be held responsible for the subsequent accident if the owner and the government were not negligent in attempting to mark and re-

move the wreck. While I recognize that this is a possible interpretation of the Act, I believe that the *Red Star Towing* interpretation, which places the exclusive duty upon the owner to avoid further loss, is preferable since it simplifies the issue of liability and makes the removal of obstructions more likely.

Yet that argument, while appealing at first sight, ignores the purpose of the Wreck Act—to keep the navigable channels free of obstructions. If, as Combi Lines and the government contend, the negligent sinker of a vessel was responsible not only for the cost of removal, but also for the subsequent damage occasioned by a future collision, there would be no incentive on the owner (or the government in the case of abandonment) to mark and remove the wreck other than the criminal penalties provided in the Wreck Act itself. And as the *Wyandotte* case itself recognized, those penalties by themselves are inadequate to insure compliance with the Act. *Wyandotte, supra*, 389 U.S. at 202, 88 S.Ct. at 386. Only by making the owner responsible for subsequent damage does the statute create any real incentive to remove obstacles from navigation. Moreover, the equity argument that is so powerful in *Wyandotte* and *Medical Branch* is considerably weakened in the present context. Instead of simply paying for the cost of removing the ship it negligently sank, the original tortfeasor would now be required to pay for the damage resulting from a subsequent collision—an accident which would not have occurred if the vessel had been marked and/or removed. I do not believe that equity "compels" such a result.

In conclusion, I find that § 15 of the Wreck Act makes the only proximate cause of a collision between a wreck and another vessel, the failure to mark and/or remove the wreck. Accordingly, while the United States and Combi Lines may have valid claim against the upriver defendants for the cost of removing the Combi barge, they do not have a claim for the destruction of the Colocotronis or its cargo caused by its collision with the Combi barge.