Walter Douglas NUNLEY, Plaintiff,

v.

M/V DAUNTLESS COLOCOTRONIS, et al., Defendants.

UNITED STATES of America and Combi Lines, Defendants-Appellants,

v.

POINT LANDING, INC., et al., Defendants-Appellees.

No. 81-3366.

United States Court of Appeals, Fifth Circuit.

Feb. 4, 1983.

Opinion on Granting of Rehearing En Banc April 6, 1983.

Debra J. Kossow, Torts Branch, Civ. Div., U.S. Dept. of Justice, Washington, D.C., for defendants-appellants.

Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Fred E. Salley, Estelle E. Mahoney, New Orleans, La., for Combi Lines.

G. Hamp Uzzelle, III, Alex Lankford, III, Mobile, Ala., for Dravo Melching Inc.

Reuter & Reuter, Normand F. Pizza, New Orleans, La., for Zito Fleeting, Inc.

J. Walter Ward, Jr., New Orleans, La., for Zito Fleeting, Zito Towing and Highlands Ins. Co.

John B. Gooch, Jr., New Orleans, La., for Point Landing.

Before GARZA, TATE and WILLIAMS, Circuit Judges.

TATE, Circuit Judge:

A barge was sunk in 1974 when struck by other vessels that had broken loose from their moorings upstream, allegedly through the negligence of upriver tortfeasors. The sunken vessel was struck three years later, at that time unmarked in presence, by another vessel. The central issue of this appeal is whether the initial tortfeasors are relieved as a matter of law of liability for damages resulting from the subsequent collision because of the failure of the sunken vessel's owner or of the United States to perform any duties of marking or removing the sunken vessel imposed by or consequent to the Wreck Act.[1] Finding no legislative intent of the Act to relieve the initial tortfeasor of liability under usual principles of maritime law, we reverse the district court's determination that as a matter of law, based on the Wreck Act, the sole proximate cause of the subsequent collision with the sunken vessel was the failure of its

owner or of the United States to mark or to remove it.

*The Procedural and Factual Context*

The present appeal arises out of consolidated litigation that, with regard to the issue before us, concerns the responsibility for damages caused to the M/V DAUNTLESS COLOCOTRONIS ("the Dauntless") when it collided in 1977 with a sunken barge ("the Combi barge"). The barge had been sunk in 1974, through the alleged negligence of the appellee parties ("the upriver defendants"). The Dauntless parties had initially sued (but subsequently dismissed) the upriver defendants, on allegations that their initial negligence (with regard to the sinking of the barge) was causal to the subsequent collision between the Dauntless and the sunken barge. These Dauntless claimants also sued the Combi-barge owners and the United States, contending that their failure to mark or remove the vessel also constituted a proximate cause of the subsequent collision. By appropriate pleadings, the Combi owners and the United States asserted demands that the upriver defendants indemnify or contribute to them for any damages recovered against them by the Dauntless claimants for their failure to mark or remove the vessel.

The present appeal is from an order of the district court granting the upriver defendants' motion for judgment on the pleadings. Fed.R.Civ.P. 12(c), (h)(2). The substance of the motion was that, accepting all well-pleaded allegations as correct, neither the Combi owners nor the United States had stated a claim upon which relief could be granted. In granting the motion and dismissing the claims against the upriver defendants, the district court held that, conceding their initial negligence in sinking the barge, nevertheless, insofar as the Wreck Act cause of action against the Combi owners or the United States for failure to mark or remove the sunken vessel, these

---

1. Sections 15, 16, 19 and 20 (33 U.S.C. §§ 409, 411, 412, 414, and 415) of the Rivers and Harbors Act of 1899, as amended, 33 U.S.C. §§ 401 *et seq.* The Wreck Act imposes a duty upon the owner of a sunken vessel to mark and raise

it and, in the event of the owner's default or abandonment, affords the United States certain statutory authority with regard to the sunken vessel.

parties could not recover against the upriver defendants because the proximate cause of the subsequent Dauntless collision with this sunken Combi barge was the failure of the Combi owners or the United States to perform marking or removing duties required by the Act. *Nunley v. M/V Dauntless Colocotronis,* 513 F.Supp. 720 (E.D.La. 1981). The Combi owners and the United States appeal this interlocutory admiralty decree. 28 U.S.C. § 1292(a)(3).

The motion for judgment on the pleadings for failure to state a claim should not be granted unless it appears beyond doubt that the Combi owners and the United States can prove no set of facts that would entitle them to indemnity or contribution from the upriver defendants if they themselves are held liable to the Dauntless claimants. *Herpich v. Wallace,* 430 F.2d 792, 802 (5th Cir.1970). Therefore, for present purposes,[2] we accept the following facts as if established:

(1) The Combi barge was sunk in 1974 through the negligence of the upriver defendants, and neither the barge nor its owners were at fault;

(2) In 1977 the Dauntless struck and was damaged by the unmarked sunken Combi barge;

(3) After the sinking, Combi negligently failed in some respect to mark or remove its sunken barge as required by the Wreck Act;[3]

(4) Likewise, the United States was at fault under the circumstances for failing to continue to mark or else to remove the sunken barge after learning of its presence and initially undertaking to mark it;

(5) The damages at issue are solely those caused the Dauntless claimants through the failure of the Combi owners or the United States to mark or to remove the sunken barge.[4]

The sole issue is whether, under the facts thus posed, the upriver defendants may be required to contribute to or indemnify the Combi owners or the United States for any damages recovered against them by the Dauntless parties based upon fault arising from Wreck Act requirements in failing to mark or to remove the sunken barge, insofar as this failure was a cause of the Dauntless collision with it.

*The Wreck Act*

■ The Wreck Act provides that "[it] shall not be lawful ... to voluntarily or carelessly sink, or permit or cause to be sunk, vessels or other craft in navigable channels...." Section 15, 33 U.S.C. 409, 411.[5] The statute's prohibition and scope

---

**2.** The motion for judgment on the pleadings accepts all well-pleaded facts most favorable to the party opposed to the motion. Actually, on the merits, the upriver defendants deny any negligence or even that the Dauntless struck the Combi barge, while both the Combi owners and the United States deny any actionable failure to mark or to remove the sunken barge.

**3.** The Combi owners argue that the motion-accepted facts should include their allegations that they were free of fault in failing to mark or remove their sunken barge. If so, they would not be liable, and the upriver defendants would be entitled to judgment on the pleadings absolving them from any duty to indemnify or contribute the Combi parties because under the pleadings thus construed no damages would be recovered against them. Under the pleadings, the upriver defendants' duty to indemnify or contribute would only arguably arise if the Combi owners were held liable for a failure to mark or to remove. We therefore so construe the pleadings as most favorably to the latter.

**4.** By their motion for judgment on the pleadings, the upriver defendants did not seek judgment dismissing any claims against them for the cost of marking or removing the sunken barge. *See Wyandotte Transportation Company v. United States,* 389 U.S. 191, 88 S.Ct. 379, 19 L.Ed.2d 407 (1967).

**5.** Section 15 of the Wreck Act, 33 U.S.C. § 409 states:

§ 409. *Obstruction of navigable waters by vessels; floating timber; marking and removal of sunken vessels*

It shall not be lawful to tie up or anchor vessels or other craft in navigable channels in such a manner as to prevent or obstruct the passage of other vessels or craft; or to voluntarily or carelessly sink, or permit or cause to be sunk, vessels or other craft in navigable channels; or to float loose timber and logs, or to float what is known as "sack rafts of timber and logs" in streams or channels actually navigated by steamboats in such manner as to obstruct, impede, or endanger navigation. And whenever a vessel,

apply to both owners and non-owners of vessels who intentionally or negligently cause them to sink. *University of Texas Medical Branch at Galveston v. United States,* 557 F.2d 438, 444 (5th Cir.1977) *cert. denied,* 439 U.S. 820, 99 S.Ct. 84, 58 L.Ed.2d 111. By the literal terms of the statute, only the owner of the vessel sunk, *"accidentally or otherwise", Id.,* has duties to visibly mark it and to remove it. However, the United States Supreme Court has held that the enactment was not intended to make the statutory remedies exclusive, and that under principles of tort liability the negligent non-owner may be liable for the costs of removing the wreck or may be required by the United States through injunctive relief to remove the sunken vessel. *Wyandotte Transportation Co. v. United States,* 389 U.S. 191, 200–05, 88 S.Ct. 379, 385–87, 19 L.Ed.2d 407 (1967).

*Liability for Damages Resulting from Subsequent Collision with Unmarked Sunken Vessel*

We are here concerned with the liability for damages resulting from a post-sinking collision with the unmarked wreck of a sunken vessel.[6] The decisions of this circuit make clear that the *owner* of a sunken vessel may be held liable for such damages if he was negligent either in the sinking or the failing to mark-remove the vessel. *Al-*

lied *Chemical Corporation v. Hess Tankship Co. of Del.,* 661 F.2d 1044, 1060–61 (5th Cir.1981); *Tennessee Valley Sand & Gravel Company v. M/V Delta,* 598 F.2d 930, 934 (5th Cir.1979); *Humble Oil & Refining Co. v. The Tug Crochet,* 422 F.2d 602, 609 (5th Cir.1970). However, where the asserted negligence of the owner is only his failure to perform marking-removing duties, these decisions also recognize that (unlike those in another circuit, *see* text at note 7 *infra*) the owner who is not negligent in the sinking may escape liability for non-marking when he "has made a full, good faith search for his craft and cannot find it." *Allied Chemical, supra,* 681 F.2d at 1061.

Until now, however, this circuit has not addressed the issue as to what extent, if any, the *non*-owner whose negligence sank a vessel may be held liable for damages resulting from another vessel's subsequent collision with a sunken wreck that is unmarked.

We observe, preliminarily, that the statutory scheme serves an important function, as noted by the cited decisions. When a danger to navigation is established in the form of a sunken vessel, the cause of which is often obscured by time-consuming multiparty litigation, the statute places a duty on an easily determinable figure, the owner of the wreck, to ensure that the danger of the

---

raft, or other craft is wrecked and sunk in a navigable channel, accidentally or otherwise, it shall be the duty of the owner of such sunken craft to immediately mark it with a buoy or beacon during the day and a lighted lantern at night, and to maintain such marks until the sunken craft is removed or abandoned, and the neglect or failure of the said owner so to do shall be unlawful; and it shall be the duty of the owner of such sunken craft to commence the immediate removal of the same, and prosecute such removal diligently, and failure to do so shall be considered as an abandonment of such craft, and subject the same to removal by the United States as provided for in sections 411 to 416, 418, and 502 of this title.

6. In the ensuing discussion, we will direct our attention exclusively to the owner's duty to mark or remove his sunken vessel, and its effect, if any, upon the residual liability of a non-owner tortfeasor who negligently had caused the vessel to sink. We will not discuss

in the text, as unnecessary for disposition of this case, the circumstances in which the United States may share or supersede the owner's responsibility, as, *e.g.,* when it once undertakes to mark but thereafter negligently fails in that undertaking. *See, e.g., Indian Towing Co. v. United States,* 350 U.S. 61, 69, 76 S.Ct. 122, 126–27, 100 L.Ed. 48 (1955); *Greer v. United States,* 505 F.2d 90, 92 (5th Cir.1974). Suffice it to say that, for present purposes, the upriver defendants' defense against the United States is generically similar to its defense against the Combi-barge owners, in that in both instances the upriver defendants contend that the failure to mark relieves them of liability and makes such failure the sole proximate cause of the subsequent collision with the unmarked wreck. The reasons for which we reject the defense against the non-marking owner are the same as those for which we reject the defense against the United States.

obstruction is immediately lessened. In this way, the wreck may be marked and removed quickly, thus reducing the chance that it will cause injury to others. However, in keeping with the general principles of maritime tort that an innocent party should not be made to suffer while the party at fault escapes liability, *Wyandotte, supra,* 389 U.S. at 204, 88 S.Ct. at 387, the jurisprudence permits the party that incurs the marking and removal expenses to recover these from the party whose negligence caused the sinking.

Liability for subsequent damage, however, with which we deal here, is different in important respects from liability for marking and removing. Marking-removing liability may easily be seen to be a direct and foreseeable result of the initial negligence that caused the wreck to sink.

Liability for damage resulting from a subsequent collision with an unmarked vessel, however, presents more problems. Since the Wreck Act places the duty to mark and remove squarely on the shoulders of the *owner* of the wreck, and not on the negligent sinker, it may be said that the failure of the owner to perform this duty is in major part the cause of the subsequent accident—if a wreck has been marked or removed by its owner, its presence does not create as foreseeable a risk of injury as it does when unmarked. Nevertheless, if the wreck had not been negligently caused by the upriver defendants in the first place, it would never have been situated so as to obstruct a navigable waterway, and the duty to mark and remove would never have arisen.

The upriver defendants argue for a rule that the consequences of their negligence stop with their liability for the damages to the sunken vessel itself and for the costs of marking and removing it. They argue that, since they themselves had no duty to mark the wreck, they should not be liable for damages caused by subsequent collisions with the unmarked wreck. Such a rule may indeed be supportable by sound reasons of public policy with regard to allocating risks of harm in maritime commerce.

The issue before us, however, is whether the Wreck Act imports such a rule.

In the present instance, the subsequent collision occurred three years after the Combi barge was sunk through the negligence of the upriver defendants. Since judgment was on the pleadings alone, the rule relied upon as a matter of law by the upriver defendants signifies that in all circumstances whatsoever the wrongdoer is insulated from liability for post-sinking collisions with the sunken vessel, a hazard created by his negligence—whether that collision was three years, thirty months, three months, thirty days, three days, or (possibly) even three minutes. Unless we are willing to hold that in no circumstance could the upriver defendants be held liable for damages resulting from the post-accident collision with the unmarked wreck, judgment on the pleadings was improvidently here granted.

The Wreck Act itself refers only to the duty of an owner to mark a vessel. It does not refer to any liability that subsequently attaches, because of the failure to mark the unsunken wreck, whether the liability be that of the owner or of a negligent non-owner who causes the wreck.

We do not find any intent in the Act to preempt any remedy against a tortfeasor for damages resulting from an unmarked wreck. The remedies and procedures specified by the statute have been held by the United States Supreme Court as "not intended to be exclusive," at least not insofar as the United States government is concerned. *Wyandotte, supra,* 389 U.S. at 200–01, 88 S.Ct. at 385. The courts have, in fact, permitted recovery against a tortfeasor by remedies beyond those specified by the statute. These include recovery from the negligent party for the expenses incurred in marking and removing the wreck, *Id.* at 204, 88 S.Ct. at 387, *Tennessee Valley, supra,* 598 F.2d at 934, and injunctive relief to compel removal of such an obstruction, *Wyandotte, supra,* 389 U.S. at 203–40, 88 S.Ct. at 386–87. As the Court stated, there is "no indication" either in the statutory language itself or "anywhere

else—in the legislative history of the Act, in the predecessor statutes, or in nonstatutory law—that Congress might have intended that a party who negligently sinks a vessel should be shielded from personal responsibility." *Wyandotte, supra,* 389 U.S. at 200, 88 S.Ct. at 385.

General principles of maritime tort support liability, for at least apportioned damages resulting from post-sinking collisions with the wreck, on the part of the wrongdoer who negligently caused it. "[N]egligent conduct on the navigable waters that causes loss to another constitutes a maritime tort," *United States v. M/V Big Sam,* 681 F.2d 432, 443 (5th Cir.1982). Here, where for purposes of the judgment on the pleadings the negligence of the opposing parties is conceded, the causal initial negligence of the upriver defendants that contributed to the later accident would ordinarily require them to bear their apportioned share of the loss. *United States v. Reliance Transfer Co., Inc.,* 421 U.S. 397, 411, 95 S.Ct. 1708, 1715–16, 44 L.Ed.2d 251 (1975). In *Allied Chemical, supra,* this court recently rejected the contention of a non-owner negligent sinker that a subsequent failure of the owner to mark his vessel constituted a superseding cause of a post-sinking collision, so that the non-owner thus should have been exculpated from liability for damages resulting therefrom. We there noted, although by way of dicta (since we affirmed on another ground), that "[a] subsequent negligent act does not excuse prior negligence." *Allied Chemical, supra,* 661 F.2d at 1060.

No more than could the Supreme Court in *Wyandotte* with regard to a somewhat similar contention of negligent non-owners, are we able to find either in the statutory language or in the legislative history of the Wreck Act—which in terms places criminal liability upon those who negligently cause a wreck in the navigable waters, as well as upon a vessel's owner who fails to mark

it—any legislative purpose to relieve the tortfeasor who caused the wreck of his civil liability for the damages consequent to his negligence. Perhaps the failure of other parties to mark the sunken wreck may in some circumstances be a superseding cause of the subsequent collision, or perhaps the tortfeasor's fault may be minimal compared with the fault of the non-marking parties. These, however, are issues that may not be decided by a judgment on the pleadings alone, as in this case.

*The Upriver Defendants' Contentions*

In rejecting the above view, the district court held that by virtue of the Wreck Act "the only proximate cause of a collision between a wreck and another vessel" is "the failure to mark and/or remove the vessel." 513 F.Supp. at 726.

In so holding, and in thus exculpating the upriver defendants of liability for their pre-sinking negligence, the district court relied upon decisions from the Second Circuit,[7] which it correctly construed as indicating that "the *only* relevant duty to the victim of a subsequent collision with a sunken wreck is the duty of the owner to mark and remove the wreck. The preceding breach of duty by the original tortfeasor which led to the sinking of the wreck is irrelevant for purposes of determining liability for the later accident." 513 F.Supp. at 723. For the reasons previously stated, we are not persuaded by these decisions that the Wreck Act intended to exculpate negligent non-owners who cause a wreck of the civil consequences of their negligence under maritime tort law, nor that the Act intended to make the owner's failure to mark/remove a sunken vessel the sole proximate cause of any post-sinking collision with the wreck.

With regard to these Second Circuit decisions, we further observe that they in part are a corollary of that circuit's rule that imports an almost strict liability upon the

---

7. *Lowery v. The Tug, Ellen S. Bouchard,* 128 F.Supp. 16 (N.D.N.Y.1955), *aff'd,* 229 F.2d 436 (2d Cir.1956); *Red Star Towing & Transportation Co. v. Woodburn,* 18 F.2d 77 (2d Cir.1927); *The R.J. Moran,* 299 F. 500 (2d Cir.1924); *The*

*Anna M. Fahy,* 153 F. 866 (2d Cir.1907); *American Commercial Barge Line Co. v. Eagel Marine Industries, Inc.,* 1977 A.M.C. 475 (E.D.Mo. 1976) (relying on the Second Circuit decisions).

sunken vessel's owner for his failure to mark the vessel, whether or not he has actually had an opportunity to do so. In application of the Second Circuit rule and its corollary, a victim who is caused loss by a post-sinking collision is not deprived of a remedy for his damages, for he may always look to the non-marking owner for their payment.

The rule in this circuit differs, however: As earlier noted, the owner may be relieved of his liability to mark if he is faultless in failing to do so. When the wreck is unmarked through the non-negligent owner's completely faultless inability to locate it, its danger to water traffic (essentially created through the negligence of the non-owner who sank it) is just as great as if the owner himself had failed to mark it although knowing of its location; yet the owner of the unmarked vessel is not liable for subsequent damages. In such a circumstance, if indeed we now in the face of our own rule also adopt the Second Circuit's corollary that insulates the original tortfeasor who caused the wreck from liability for post-sinking collisions, a victim of the subsequent collision would be without remedy against either the tortfeasor or the faultless owner, which "would permit the result, extraordinary in our jurisprudence, of a wrongdoer shifting responsibility for the consequences of his negligence onto his victim." *Wyandotte, supra,* 389 U.S. at 204, 88 S.Ct. at 387.

Nor are we persuaded that an interpretation of the Wreck Act as not insulating the initial tortfeasor from liability will somehow defeat or erode or be inconsistent with its statutory purpose of providing for certainty as to who is responsible to mark immediately a sunken vessel. The desired goal, *i.e.,* that the vessel be marked as soon as possible, is aided so long as the owner is aware that he faces potential liability for any negligent failure to do so. We are unable to see that this goal is impeded by the circumstance that, if the owner fails to

mark his sunken vessel, the original tortfeasor who sank it may be called upon to share the damages that may result from a subsequent collision with the unmarked vessel.

*Conclusion*

We find no statutory purpose expressed or implied by the Wreck Act to insulate as a matter of law a tortfeasor who negligently sinks a vessel from liability for damages resulting from a post-sinking with the unmarked wreck thereof. Accordingly, we VACATE the judgment dismissing on the pleadings the claims of the Combi owners and of the United States against the upriver defendants, and we REMAND this case for further proceedings consistent with the views here expressed.

VACATED AND REMANDED.

JERRE S. WILLIAMS, Circuit Judge, dissenting:

The facts of the case are fully and accurately set out in the majority opinion and need not be repeated in detail here. The motor vessel DAUNTLESS COLOCOTRONIS collided with the sunken barge, owned by Combi Lines, over three years after the barge had sunk. It is not disputed that for purposes of this case the so-called "upriver" defendants, various operators of fleeting facilities for barges, were negligent in causing the sinking of the Combi-owned barge. It is also assumed for purposes of this decision, as the majority did assume, that either Combi Lines or the United States Government or both are negligent because of violation of 33 U.S.C. § 409 (the statute popularly known as the Wreck Act) for having failed to mark or remove the sunken barge when it had sunk "in such a manner as to obstruct, impede, or endanger navigation." [1]

It is this failure to act by the owner of the barge or the United States Government which compels my dissent to the holding of the majority. Succinctly stated, if the owner of the barge and the United States

---

1. The text of the applicable section of the Act, § 409, is printed in full in footnote 6 of the   majority opinion.

Government had carried out their clear obligations under the Wreck Act, the DAUNTLESS would not have collided with the barge. Under the Wreck Act, the negligence of the upriver defendants did not play any role under the law, therefore, in "causing" the collision of the DAUNTLESS with the barge.

It is clear in the law that the upriver defendants because of their negligence were responsible for the costs of marking or removing the sunken barge. This is conceded, and these claims have been settled with Combi and others. The issue is whether they continue to be liable after more than three years for damage to the DAUNTLESS caused by the collision, because, and solely because, of the failure of Combi and the United States Government to carry out their obligations under the statute.

The majority opinion insists that because this was a motion for summary judgment to absolve the upriver defendants, we must assume the same rule if the hazard created by the negligence caused the collision "three years, thirty months, three months, thirty days, three days, or (possibly) even three minutes" before the collision. And as supporting this sweeping view, I read the opinion of the district court to rely upon a firm and flat rule that the upstream defendants could never be responsible for damages in the case of a subsequent collision no matter how quickly it followed after the negligent sinking. I do not agree with this extreme application of the statute. Nor do I agree with the majority of this Court holding that the negligent actors may be liable throughout history for the results of their negligence when the Wreck Act requires the owner or United States Government to obviate the hazard. Under the well-pleaded facts of this case, allegations to which there is no dispute, this collision occurred more than three years after the negligent act caused the sinking.

A sensible interpretation and application of the Wreck Act requires that the owner and the government have a reasonable time to carry out their duties of marking and removal under the statute before their failure to do so would become the sole cause of a subsequent collision. But the issue of whether there was a reasonable time does not arise in this case.[2] Perhaps, it might be argued the case should be returned for trial if such a pragmatic rather than absolute rule is applied. The trouble with doing so is that we already know the critical fact—the long delay in clear and overt violation of the Wreck Act on the part of Combi and the United States Government. Under these circumstances, a trial would be without purpose. Whatever the result of an interpretation and application of a reasonable rule, and a reasonable opportunity for Combi and the United States Government to act, they were in clear statutory default under the known facts of this case.

In my view Judge Learned Hand in the United States Court of Appeals for the Second Circuit confirmed the correct law in this kind of case many years ago. In *Red Star Towing and Transportation Co. v. Woodburn,* 18 F.2d 77, 79 (2nd Cir.1927), Judge Hand in referring to the Wreck Act said:

> The statute establishes a new duty arising after the sinking, and demanding as its condition nothing but the fact and notice of it to the wreck owner. Though the tug be a guilty party to the original mishap, the duty is not ordinarily upon her to provide against further loss; the statute imposes the duty upon the owner alone, and absolves the tug from subsequent consequences, which conceivably might otherwise be thought to be the proximate result of her original fault.

And then, if the owner does not carry out its obligations, the duty under the Wreck Act falls squarely on the United States Government.

This rule has been consistently followed.[3] It must be stressed that no case to the contrary is cited in the majority opinion or in the briefs, and none has been found in

---

**2.** Also not arising in this case is the freedom of the owner from application of the rule when the sunken vessel cannot be located after a full and faithful search. It is properly held in such a case that the non-negligent owner is not liable for failure to carry out the duties required by the Wreck Act. *Allied Chemical Corp. v. Hess Tankship Co. of Del.,* 661 F.2d 1044, 1061 (5th Cir.1981).

**3.** The interpretation which I urge was first established only a few years after the Act was passed in 1899, *The Anna M. Fahy,* 153 F. 866 (2nd Cir.1907), and has been consistently followed in the Second Circuit. In addition to *Red Star Towing, see, e.g., Lowery v. The Tug Ellen S. Bouchard,* 128 F.Supp. 16 (N.D.N.Y. 1955), *aff'd on opinion of trial court,* 229 F.2d 436 (2nd Cir.1956).

any circuit court. The case upon which the majority of the Court relies, *Wyandotte Transportation Co. v. United States,* 389 U.S. 191, 88 S.Ct. 379, 19 L.Ed.2d 407 (1967), holds only that those who negligently cause the sinking of a vessel are financially responsible for the costs of removal. This is obviously a holding which follows the statutory scheme, as the upriver defendants concede. It is consistent with the established rule as the quotation from the opinion in *Red Star Towing, supra,* shows. The fallacy is in going beyond the sinking to make the negligent non-owners responsible for damage to the vessel which later collides with the sunken barge. For this there is no authority in the law. No prior holding exists which supports the majority opinion. I cannot concur in abandoning all prior precedent and creating a wholly new interpretation of the Wreck Act after 84 years.

The Second Circuit also has developed a rule that the owner under the Wreck Act has a positive obligation to remove the sunken vessel rather than abandon it. I agree with the majority opinion that this rule is not correct. It does not follow the wording of the statute. But I do not agree that this rule is the underpinning of the *Red Star Towing* rule. The two rules are not directly related. It is not necessary in this case to consider at all the relative responsibilities of Combi and the United States Government under the Wreck Act. It is clear from the Act that one or the other has the obligation to mark or remove, but in any event to eliminate the hazard to navigation caused by the sunken vessel.

The Wreck Act has an important purpose. It places the full and total responsibility of protecting navigation from the hazards of sunken vessels on the shoulders of the owners and the United States Government. These two entities, having totally failed in their responsibilities under the statute, now undertake to shift that responsibility to the upstream defendants. I can read this only as an escape not authorized by the statute and as a negation of important congressional policy designed to eliminate such collisions.

While I do not agree in full with the reasoning of the district court, because it established a rule which does not yield to reasonableness, its awarding of a summary judgment holding the upstream defendants not liable in this case was in my view clearly correct and should be affirmed by this Court.

## ON SUGGESTION FOR REHEARING EN BANC

Before CLARK, Chief Judge, BROWN, GEE, RUBIN, GARZA, REAVLEY, POLITZ, RANDALL, TATE, JOHNSON, WILLIAMS, GARWOOD, JOLLY and HIGGINBOTHAM, Circuit Judges.

BY THE COURT:

A member of the Court in active service having requested a poll on the application for rehearing en banc and a majority of the judges in active service having voted in favor of granting a rehearing en banc,

IT IS ORDERED that the cause shall be reheard by the Court en banc with oral argument on a date hereafter to be fixed. The Clerk will specify a briefing schedule for the filing of supplemental briefs.