TENNESSEE VALLEY SAND & GRAVEL CO., Plaintiff-Appellant, Cross-Appellee,

v.

M/V DELTA, her engines, tackle, apparel, etc., in rem and Hobart-Worley Towing Company, Inc., in personam, Defendants-Appellees, Cross-Appellants.

No. 77–2202.

United States Court of Appeals, Fifth Circuit.

July 11, 1979.

E. Spivey Gault, Frank S. Thackston, Jr., Greenville, Miss., for plaintiff-appellant, cross-appellee.

Joel J. Henderson, Greenville, Miss., for defendants-appellees, cross-appellants.

Before TUTTLE, GODBOLD and RUBIN, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

To reach a conclusion in a reasonable way may be the best path to decision-making, but it does not always assure that the result will itself be reasonable. Indeed, decisions that prove to be sound may be reached after following inappropriate or tortuous processes, or even by relying on the vagar-

ies of fate or luck. Abraham Lincoln stressed the importance of result when he said, "I do the best I know how . . . . If the end brings me out all right, what is said against me won't amount to anything. If the end brings me out wrong, ten angels swearing I was right would make no difference."

We here consider whether the principle that the injured victim of a tort may recover only those damages that were not reasonably avoidable turns on his decision-making process or the result reached by that process. We conclude that, because Tennessee Valley reached safe harbor, its failure to take adequate sightings along the way will not preclude it from recovering for the entire voyage.

## I.

On June 11, 1972, Tennessee Valley's barge AL–448 sank in an inlet to the Tennessee River, where it had been tied off after being towed by the M/V Delta, owned by Hobart-Worley Towing Company. Hobart-Worley claimed that the barge sank as a result of its unseaworthiness, without any fault on the part of the tower. Tennessee Valley countered that the sinking resulted entirely from Hobart-Worley's lack of care. Neither contention was frivolous, and it was possible that either would ultimately be found to be correct or that, under the maritime doctrine of comparative fault, see *United States v. Reliable Transfer Co.,* 1975, 421 U.S. 397, 95 S.Ct. 1708, 44 L.Ed.2d 251, the loss might be decreed against both in shares yet to be determined.

After the sinking, Tennessee Valley decided, without full investigation of the sunken barge, to try to raise her, and negotiated a salvage contract with the Southern Marine Construction Company. Southern Marine salvaged the cargo, and then sent a diver down to inspect the vessel and ascertain its condition. The diver reported that the barge was lying across an underwater creek and, as a result, was severely buckled. He advised his superiors that an application should be made to the United States Army Corps of Engineers for permission to abandon the barge where she lay.

The salvage operation had been in process ten days when this information was conveyed to a representative of Tennessee Valley. He sought no counsel from the Corps of Engineers but instructed Southern Marine to continue work. The barge was raised and sold for scrap.

Tennessee Valley sued Hobart-Worley for the damages it suffered as a result of the sinking, including approximately $20,000 expended in raising the barge. After a non-jury trial, the experienced trial judge concluded that the sinking resulted entirely from the fault of Hobart-Worley, but denied recovery for the expense of raising the barge on the basis that Tennessee Valley's failure to contact the Corps of Engineers before incurring any expenses "evinced utter indifference to plaintiff's obligation to mitigate damages." Tennessee Valley appeals from this denial. We reverse.

## II.

■ Courts have often referred to a so-called duty to mitigate damage, see, e. g., *Golf City, Inc. v. Wilson Sporting Goods Co.,* 5 Cir. 1977, 555 F.2d 426, 436; *Robbins v. Farmers Union Grain Terminal Association,* 8 Cir. 1977, 552 F.2d 788, 797; *Schwartz v. NMS Industries, Inc.,* 5 Cir. 1975, 517 F.2d 925, 931, cert. denied, 1976, 423 U.S. 1054, 96 S.Ct. 785, 46 L.Ed.2d 643, and *on appeal after remand,* 5 Cir. 1978, 575 F.2d 553, 556; but there is no such duty, for there is no correlative right upon its violation. *Ellerman Lines, Ltd. v. The President Harding,* 2 Cir. 1961, 288 F.2d 288, 289. See generally McCormick on Damages § 33 at 127 (1935); Restatement (Second) of Torts § 918, comment a (1977); Restatement (Second) of Contracts § 364, comment b (Tent. Draft No. 14, 1979). There is instead a method of apportioning damages between the parties where the injured party has, subsequent to infliction of the harm, failed to exercise that degree of care society demands of the reasonable person. *See Alcoa Steamship Co. v. Charles Ferran & Co.,* E.D.La.1966, 251 F.Supp. 823, 832, aff'd, 5 Cir. 1967, 383 F.2d 46, cert. denied, 1968, 393 U.S. 836, 89 S.Ct. 111, 21 L.Ed.2d 107.

The consequence of such post-injury negligence—as distinguished from negligence contributing to the harm and acting as a bar to recovery, *see, e. g., Vizzini v. Ford Motor Co.,* 3 Cir. 1977, 569 F.2d 754, 766; *Ford Motor Co. v. Dallas Power & Light Co.,* 5 Cir. 1974, 499 F.2d 400, 414–15; *Southport Transit Co. v. Avondale Marine Ways,* 5 Cir. 1956, 234 F.2d 947, 951–52 n. 7; *see generally* 2 F. Harper & F. James, The Law of Torts § 22.10 at 1231–34 (1956); *compare* W. Prosser, Handbook of the Law of Torts § 65 at 422–24 (4th ed. 1971)—is to deny to the negligent victim damages "for so much of the losses as are shown to have resulted from failure on his part to use reasonable efforts to avoid or prevent them." *Southport Transit Co. v. Avondale Marine Ways, supra,* 234 F.2d at 952. *See* Restatement (Second) of Torts § 918(1) & comment a (1977). *Cf.* Restatement (Second) of Contracts § 364(1) and comments (Tent. Draft No. 14, 1979).

The burden of showing that the victim of tortious conduct failed to minimize his damages rests with the wrongdoer. *See, e. g., Alcoa Steamship Co. v. Charles Ferran & Co.,* 5 Cir. 1967, 383 F.2d 46, 54; *Ellerman Lines, Ltd. v. The President Harding, supra,* 288 F.2d at 291; *Dixie Plywood Co. v. S.S. Federal Lakes,* S.D.Ga.1975, 404 F.Supp. 461, 465, *aff'd,* 5 Cir. 1975, 525 F.2d 691, *cert. denied,* 1976, 425 U.S. 974, 96 S.Ct. 2174, 48 L.Ed.2d 798. *See generally* 2 F. Harper & F. James, The Law of Torts § 20.3 at 1130 (1956); McCormick on Damages § 33 at 130 (1935). Thus, although the injured party is precluded from recovering for damages caused by his unreasonable conduct after the injury, the defendant must demonstrate (1) that the conduct was unreasonable, and (2) that it had the consequence of aggravating the harm.

Proof of only one of these contentions is insufficient as a matter of law to warrant denial of recovery. If the plaintiff acts unreasonably after defendant's tortious conduct, but this action has no impact on the scope of the harm, the defendant does not thereby escape liability for the full consequences of his own negligence. *See, e. g.,*

*Jones v. Bender Welding & Machine Works, Inc.,* 9 Cir. 1978, 581 F.2d 1331, 1337 (defendant failed to show there was a dealer closer than San Diego to whom plaintiff should have towed his disabled vessel from Guatemala); *Dixie Plywood Co. v. S.S. Federal Lakes, supra,* 404 F.Supp. at 466–67 (plaintiff's inadequate survey to determine damage to cargo did not contribute to the extent of the loss because cargo brought full value when sold as salvage). Similarly, if the plaintiff acts reasonably, the fact that his efforts turn out to be unsuccessful and actually increase the loss does not preclude recovery for all expenses incurred in the process. *See, e. g., Pearlstein v. Scudder & German,* 2 Cir. 1975, 527 F.2d 1141, 1145 (investor who failed to sell securities in declining market in reasonable belief that market would improve is not disabled from recovering his losses); *Ellerman Lines, Ltd. v. The President Harding, supra,* 288 F.2d at 291 (charges for hiring larger pier to unload cargo held recoverable although subsequent events obviated need to unload). *See generally* 2 F. Harper & F. James, The Law of Torts § 25.4 at 1308 & n. 6 (1956); Restatement (Second) of Torts § 919(2) & comment c (1977).

In determining whether the victim's conduct falls within the range of reasonableness, the court must consider that the necessity for decision-making was thrust upon him by the defendant, and judgments made at times of crisis are subject to human error. We do not require "infallibility or exactness of mathematical formula," *Cargill, Inc. v. The Frank A. Lowery,* N.D. N.Y.1957, 159 F.Supp. 133, 134, *aff'd,* 2 Cir. 1958, 251 F.2d 845, *cert. denied,* 356 U.S. 951, 78 S.Ct. 917, 2 L.Ed.2d 845, and will allow the injured party a wide latitude in determining how best to deal with the situation. *See, e. g., Ellerman Lines, Ltd. v. The President Harding, supra,* 288 F.2d at 290; *W. R. Grace & Co. v. Charleston Lighterage & Transfer Co.,* 4 Cir. 1952, 193 F.2d 539, 544–45, *rev'ing* E.D.S.C.1951, 98 F.Supp. 256, 266–67.

### III.

In considering the reasonableness of Tennessee Valley's decision to raise the barge, we must analyze its duties under section 15 of the Rivers and Harbors Act, 33 U.S.C. § 409. The statute imposes on the owner of a vessel sunk in a navigable channel the obligation "to commence the immediate removal of the same, and prosecute such removal diligently . . . ." The duty of an owner whose actions are responsible for the sinking is non-delegable and inescapable. *See, e. g., Humble Oil & Refining Co. v. The Tug Crochet,* 5 Cir. 1970, 422 F.2d 602, 609. If he fails to act to remove the obstruction, the government may undertake the task in the interest of navigational safety, and the owner will be held liable not only for this cost, *e. g., Lane v. United States,* 4 Cir. 1975, 529 F.2d 175, 177 n. 2; *United States v. Cargill, Inc.,* 5 Cir. 1966, 367 F.2d 971, 976, *aff'd sub nom. Wyandotte Transportation Co. v. United States,* 1967, 389 U.S. 191, 88 S.Ct. 379, 19 L.Ed.2d 407, but for any damage caused by the wreck in the meantime. *See, e. g., Humble Oil & Refining Co. v. The Tug Crochet, supra,* 422 F.2d at 608.

The owner of a vessel sunk without any negligence on his part is still subject to the statutory obligation to remove the wreck, *see, e. g., University of Texas Medical Branch at Galveston v. United States,* 5 Cir. 1977, 557 F.2d 438, 448, but is given an option: he may either raise the vessel himself and seek recovery of the expenses from the party responsible for the sinking, *In re Chinese Maritime Trust, Ltd.,* 2 Cir. 1973, 478 F.2d 1357, 1361 n. 5, *cert. denied,* 1974, 414 U.S. 1143, 94 S.Ct. 894, 39 L.Ed.2d 98, or he may abandon the vessel and allow the United States to bear the burden of removal and recovery of expenses from the negligent party. *United States v. Cargill, Inc., supra,* 367 F.2d at 978. If the non-negligent owner exercises his right to abandon, he is liable neither for the cost of removal nor for damages suffered by third parties as a result of the wreck. *See, e. g., Lane v. United States, supra,* 529 F.2d at 177 n. 2; *United States v. Raven,* 5 Cir.

1974, 500 F.2d 728, 733, *cert. denied,* 419 U.S. 1124, 95 S.Ct. 809, 42 L.Ed.2d 824; *In re Marine Leasing Services, Inc.,* 5 Cir. 1973, 471 F.2d 255, 257.

While the consequences of a determination that Tennessee Valley was or was not negligent in causing the sinking were readily ascertainable, its position with respect to fault was not so easily labelled. From the time Hobart-Worley filed an answer to the complaint until the trial court's decision was rendered, defendant alleged that the sole cause of the accident was the unseaworthiness of the barge or the negligence of Tennessee Valley or third parties. Although Tennessee Valley always contended that it was free from fault in the sinking, its vindication, if it came, would be several years away at the end of a court battle. If it were ultimately held responsible for the accident, it would be liable for expenses incurred and mishaps occurring in the meantime. Even if it then claimed that the barge was not an obstruction to navigation, the Corps of Engineers might disagree and subject Tennessee Valley to more lengthy litigation. *See, e. g., United States v. Osage Co.,* W.D.Pa.1976, 414 F.Supp. 1097, 1102.

It is true that Tennessee Valley made no inquiry of the Corps of Engineers. However, had some representative of the Corps been approached and responded, "We will not require the barge to be moved," this would not have protected Tennessee Valley against a damage suit by a third person if a wreck indeed ensued, nor against change of mind by the Corps. The government, after all, could not be estopped absent "egregious injustice." *L'Enfant Plaza Properties, Inc. v. District of Columbia Redevelopment Land Agency,* 1977, 184 U.S.App.D.C. 30, 39, 564 F.2d 515, 524. *See Utah Power & Light Co. v. United States,* 1916, 243 U.S. 389, 408, 37 S.Ct. 387, 391, 61 L.Ed. 791, 818; *Dix v. Rollins,* 8 Cir. 1969, 413 F.2d 711, 716. The most that Tennessee Valley could have gleaned from such an inquiry was the probably well-informed but strictly personal opinion of a government employee, issued without warranty. It may be that reasona-

ble wreck owners would seek such information; they could scarcely rely upon it.

Any subsequent liability was, of course, conjectural at the time Tennessee Valley made its decision to raise the barge. The company might, after trial, be held blameless and therefore not responsible for any costs. The government might decide that the sunken barge posed no threat to navigation and decline either to raise it or to seek an injunction to compel Tennessee Valley to do so. Perhaps no other vessel would come to harm because of the wreck of the AL-448 if she were left where she lay. Nevertheless, Hobart-Worley has not carried the burden of demonstrating that this contingent liability was so negligible as to make the decision of Tennessee Valley to raise the barge an unreasonable one, even if reached without proper investigation of the condition of the barge and the possibility of abandonment.

In reaching this conclusion, we do not disregard the evidence that Tennessee Valley made its decision to attempt to salvage the barge for economic reasons and not because of its exposure under the Rivers and Harbors Act. Tennessee Valley knew the sinking occurred because of a leak in the unattended barge, not as a result of a maritime disaster. It therefore believed the vessel to be lying virtually unharmed on the bottom a mere 25 feet down. Because of its inadequate investigation, it was unaware of the underwater creek that caused such extensive damage to the barge as to make it unsalvageable. However, even had Tennessee Valley conducted the decision-making process in a careful and rational manner, and become aware of the infeasibility of salvage, its obligations under 33 U.S.C. § 409 would still have made it reasonable to incur the expense of removing the wreck. We will not deny recovery because Tennessee Valley reached the right result for the wrong reasons.

## IV.

Even were we able to conclude that the decision to raise the barge was unreasonable in light of the position of the wreck outside the main channel of the Tennessee River and its 25 foot depth, Hobart-Worley has failed to satisfy its burden of showing that the decision to raise the barge augmented its damages. Only by proving that the Corps of Engineers would have allowed the barge to remain could Hobart-Worley have demonstrated that the costs incurred by Tennessee Valley in raising the vessel would not otherwise have been charged to Hobart-Worley as the responsible party. Hobart-Worley adduced insufficient evidence to support such a finding, even had the trial judge made one to that effect.

In fact, the decision of Tennessee Valley to raise the barge immediately by private undertaking may have saved Hobart-Worley considerable expense in that a government salvage operation might have proved more expensive due to changing conditions caused by delay, see *Universal Towing Co. v. United Barge Co.,* 8 Cir. 1978, 579 F.2d 1098, 1104, or due to the nature of governmental undertakings. Undoubtedly, had Tennessee Valley abandoned the barge, as Hobart-Worley contends it should have, and had the government raised it at a higher cost than that incurred by Tennessee Valley, the same claim of failure to mitigate damages would have been made. *See, e. g., Cargill, Inc. v. The Frank A. Lowery, supra.* We would likely have found such a claim as unmeritorious as that made here.

The trial court's denial of damages for the expenses incurred in salvaging the barge is REVERSED.

GODBOLD, Circuit Judge, dissenting:

The so-called duty to mitigate damages is grounded upon a policy, beneficial for the parties and for society at large, of requiring the injured party to avail himself of reasonable opportunities to hold down losses. The majority opinion, written from the viewpoint of hindsight, seems to me to reward a party that pushed ahead without availing itself of sources of information, and indeed in derogation of information furnished to its agent (the salvage company) and ultimately to it. This is antithetical to the underlying policy. I would affirm the district court.