**Walter Douglas NUNLEY, Plaintiff,**

v.

**M/V DAUNTLESS COLOCOTRONIS, et al., Defendants,**

**UNITED STATES of America and Combi Lines, Defendants-Appellants,**

v.

**POINT LANDING, INC., et al., Defendants-Appellees.**

**No. 81–3366.**

United States Court of Appeals, Fifth Circuit.

March 19, 1984.

Debra J. Kossow, Torts Branch, Civ. Div., U.S. Dept. of Justice, Washington, D.C., for U.S.

Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Fred E. Salley, Estelle E. Mahoney, New Orleans, La., for Combi Lines.

G. Hamp Uzzelle, III, Alex Lankford, III, Mobile, Ala., for Dravo Melching Inc.

Reuter & Reuter, Normand F. Pizza, New Orleans, La., for Zito Fleeting, Inc.

J. Walter Ward, Jr., New Orleans, La., for Zito Fleeting, Zito Towing and Highlands Ins. Co.

John B. Gooch, Jr., New Orleans, La., for Point Landing.

Before CLARK, Chief Judge, and BROWN, GEE, RUBIN, GARZA, REAVLEY, POLITZ, RANDALL, TATE, JOHNSON, WILLIAMS, GARWOOD, JOLLY and HIGGINBOTHAM, Circuit Judges[*].

E. GRADY JOLLY, Circuit Judge:

This appeal comes to us from a judgment on the pleadings in favor of appellees who were defendants and third-party defendants in six consolidated admiralty cases intertwined in a 1977 collision of the M/V DAUNTLESS COLOCOTRONIS (DAUNTLESS) with a sunken wreck. The appellees are alleged to have caused the sinking three years before the DAUNTLESS collided with the wreck, unmarked by its owner or the United States, each of whom is alleged to have been responsible for marking or removing the wreck under the Wreck Act.[1] The ruling appealed from is the district court's holding that "the Wreck Act makes the only proximate cause of a collision between a wreck and another vessel, the failure to mark and/or remove the wreck." *Nunley v. M/V Dauntless Colocotronis*, 513 F.Supp. 720, 726 (E.D.La.1981). A divided panel of this court vacated the judgment and remanded. 696 F.2d 1141 (5th Cir.

1983). Finding that the district court has made an erroneous interpretation of law, the court en banc vacates the district court's judgment and remands.

I.

The facts underlying this litigation are adequately set forth in the district court's opinion. *See Nunley*, 513 F.Supp. at 721–22. Assuming that the allegations of the complaint can be proved, as the motion for judgment on the pleadings requires, a Combi Lines barge (the COMBI) was sunk in 1974, through the negligence of the appellees (the upriver defendants).[2] Three years later, the unmarked wreck was struck by the DAUNTLESS. The owners of the COMBI allege in turn that they were not negligent in failing to mark the wreck. Multiplicitous litigation followed each event. The litigation arising from the original 1974 sinking was settled in October 1979 without any finding or admission of guilt on the part of any of the parties.

The 1977 collision spawned the six consolidated cases which were before the district court. The parties to the consolidated actions included the DAUNTLESS's captain, Nunley; Tenneco, the owner of the DAUNTLESS's cargo; the DAUNTLESS's owners; the United States; the COMBI's owners; and the alleged sinkers of the COMBI, the upriver defendants. The upriver defendants filed a motion for judgment on the pleadings, claiming that, even if they had caused the original sinking of the COMBI, under no set of facts could they be liable to any of the claimants, cross-claimants, or third-party claimants for damages resulting from the collision of the DAUNTLESS with the sunken wreck. The basis for this argument is that the Wreck Act

---

[*] Judge Garza, now a senior judge of this circuit, is participating as a member of the panel initially deciding the appeal now subject to en banc review. Judge Davis was not a member of the court when this case was submitted to the court en banc and did not participate in the consideration of this decision.

[1.] Sections 15, 16, 19 & 20 of the Rivers and Harbors Act of 1899 (33 U.S.C. §§ 409, 411, 412, 414 & 415) are collectively known as the Wreck Act. For the portions pertinent to this opinion, *see infra* pp. 459, 460 & notes 3 & 4.

[2.] The upriver defendants in this case are Point Landing, Inc., Zito Fleeting, Inc., Federal Barge Lines, Inc., Lykes Brothers Steamship Co., Midland Enterprises, Inc., Dravo Mechling, Inc., Admiral River Towing Co., and their respective insurance companies.

obligates the owner of a sunken vessel and, in some circumstances the United States, to mark or remove the wreck, and, since the upriver defendants (the actual sinkers of the vessel) have no similar obligation, they have no liability arising out of the DAUNTLESS's allegedly striking the COMBI. While the owners of the COMBI plead that they were not negligent, and therefore are not liable, they tender to the DAUNTLESS as defendants under Fed.R.Civ.P. 14(c) the upriver defendants. They also assert that, if they are found at fault and hence liable to the DAUNTLESS, they are entitled to indemnity or contribution from the upriver defendants.

Section 15 of the Rivers and Harbors Act, also known as the Wreck Act, provides in pertinent part:

> It shall not be lawful . . . to voluntarily or carelessly sink, or permit or cause to be sunk, vessels or other craft in navigable channels. . . . And whenever a vessel, raft, or other craft is wrecked and sunk in a navigable channel, accidentally or otherwise, it shall be the duty of the owner of such sunken craft to immediately mark it with a buoy or beacon during the day and a lighted lantern at night, and to maintain such marks until the sunken craft is removed or abandoned, and the neglect or failure of the said owner so to do shall be unlawful; and it shall be the duty of the owner of such sunken craft to commence the immediate removal of the same, and prosecute such removal diligently, and failure to do so shall be considered as an abandonment of such craft, and subject the same to removal by the United States as provided for in sections 411 to 416, 418, and 502 of this title.

33 U.S.C. § 409. The district court found that the Wreck Act made the failure to mark or remove the wreck the sole proximate cause of a subsequent collision with the sunken vessel as a matter of law and dismissed the claims against the upriver defendants. It is this holding which we consider en banc. If this is correct, then judgment was properly rendered in favor of the upriver defendants. If not, then we must consider the effect of the COMBI's alternative pleadings, that either (a) it was entirely free of fault and it tenders the upriver defendants to the DAUNTLESS, or (b) it may have been legally at fault as to the DAUNTLESS but entitled to indemnity from the upriver defendants; or (c) it may have been jointly at fault with the upriver defendants and entitled to contribution. We reverse the dismissal because: (1) if either the COMBI or the United States, or both, were entirely free of fault in failing to mark, the upriver defendants may be liable to the DAUNTLESS directly; (2) though the DAUNTLESS is entitled to recover from the COMBI or the United States if either was negligent, the party liable to the DAUNTLESS may be entitled to contribution from the upriver defendants.

## II.

### A.

The Wreck Act declares that it is illegal voluntarily or carelessly "to sink, or permit or cause to be sunk vessels or other craft in navigable channels. . . ." 33 U.S.C. § 409. The statute's prohibition and scope apply to both owners and non-owners of vessels who intentionally or negligently cause them to sink. *University of Texas Medical Branch at Galveston v. United States,* 557 F.2d 438, 444 (5th Cir.), *cert. denied,* 439 U.S. 820, 99 S.Ct. 84, 58 L.Ed.2d 111 (1977). The statute further requires the owner of a sunken wreck, whether at fault or not in causing the sinking, immediately to mark the wreck and subsequently to commence the removal of the wreck, failure of which shall constitute an abandonment of the vessel, which shall then be subject to removal by the United States. However, the United States Supreme Court has held that the enactment was not intended to make the statutory remedies exclusive, and that under principles of tort liability the negligent non-owner is subject to liabilities and obligations not provided for by the statute, such as reimbursement for the costs of removing the wreck or the obligation, through injunctive relief, to re-

move the sunken vessel. *Wyandotte Transportation Co. v. United States,* 389 U.S. 191, 200–05, 88 S.Ct. 379, 385–87, 19 L.Ed.2d 407 (1967).

This circuit has previously delineated the obligations and duties of the various parties to a sinking under the Wreck Act. We summarize those obligations and duties here.

■ The Wreck Act is not a liability without fault statute. It first imposes liability on a person whose fault causes a wreck. It next requires the owner of a sunken vessel, regardless of his fault or lack thereof in causing the sinking, immediately to mark the wreck. 33 U.S.C. § 409.[3] *In re Marine Leasing Services, Inc.,* 471 F.2d 255, 257 (5th Cir.1973).

Thus, when a danger to navigation is established in the form of a sunken vessel, the statute places a duty on an easily determinable figure, the owner of the wreck, to ensure that the danger of the obstruction is immediately lessened by its marking or removal. In this way, the wreck may be marked and removed quickly, thus reducing the chance that it will cause injury to others. We have judged performance of this duty in terms of negligence. For the duty to arise in the first instance, the owner must be notified of the sinking and be given a reasonable time in which to accomplish the marking. *Berwind-White Coal Mining Co. v. Pitney,* 187 F.2d 665, 668 (2d Cir.1951); *Red Star Towing & Transportation Co. v. Woodburn,* 18 F.2d 77, 78 (2d Cir.1927). Moreover, if the United States itself lights and marks the wreck, this relieves the owner's duty to mark. *Humble Oil & Refining Co. v. Tug Crochet,* 422 F.2d 602, 609 (5th Cir.1970). Finally, we have held that, if an owner diligently and in good faith searches for his sunken vessel but cannot find it, he has fulfilled his obligations to mark under the Wreck Act. *Allied Chemical Corp. v. Hess Tankship Co.,* 661 F.2d 1044, 1061 (5th Cir.1981). Nevertheless, in keeping with the general principles of maritime tort that an innocent party should not be made to suffer while the party at fault escapes liability, *Wyandotte, supra,* 389 U.S. at 204, 88 S.Ct. at 387, the jurisprudence permits the party that incurs the marking and removal expenses to recover these from the party whose negligence caused the sinking.

**3.** The regulations enforcing this section are found at 33 C.F.R. § 64.01 and provide in pertinent part:

§ 64.01–1 **General.**

(a) The owner of a vessel sunk in the navigable waters of the United States who fails to mark the wreck immediately for the protection of navigation with a buoy or daymark during the day and a light at night may, in addition to being in violation of 33 U.S.C. 409, be liable for resulting damages to the public. . . .

(b) The Coast Guard is authorized to mark for the protection of navigation any sunken vessel or other obstruction that is not suitably marked. Marking by the Coast Guard does not relieve the owner of any such obstruction from the duty and responsibility suitably to mark the obstruction and remove it as required by law.

§ 64.01–5 **Marking by owners.**

Buoys, daymarks, and lights established by owners of sunken vessels or other obstructions to mark such obstructions for the protection of navigation shall conform to the lateral system of buoyage prescribed by Subpart 62.25 of this chapter. Such markings shall be maintained until the obstruction is removed or the right of the owner to abandon is legally established and has been exercised.

§ 64.01–10 **Marking by the U.S. Coast Guard.**

(a) When the District Commander within whose jurisdiction a sunken vessel is located determines that the wreck is not suitably marked by the owner for the protection of navigation, he may mark the wreck in such manner and for so long as in his judgment the needs of maritime navigation require. The costs of such marking by the Coast Guard will be charged to the owner of the wreck.

(b) When the District Commander within whose jurisdiction a sunken obstruction other than a vessel is located determines that the obstruction is not suitably marked for the protection of navigation, he may mark the obstruction in such manner and for so long as, in his judgment, the needs of maritime navigation require. The costs of such marking will be charged to the owner of the obstruction. When the needs of navigation permit, the owner will be informed that the obstruction should be marked and will be afforded reasonable opportunity to mark the obstruction.

A vessel owner who negligently causes the sinking of his vessel may not thereafter abandon his vessel to the United States. If he subsequently fails to remove the sunken wreck, the negligent owner is liable for the cost of removal and for all subsequent damages resulting from the vessel's continued interference with navigation. *Humble Oil & Refining Co.*, 422 F.2d at 608; *Tennessee Valley Sand & Gravel Co. v. M/V Delta*, 598 F.2d 930, 934 (5th Cir.1979). As with the duty to mark, however, when the negligent owner has diligently and in good faith searched for his sunken vessel but cannot find it, our case law has refused to find that failure to remove constitutes a breach of the Wreck Act duty. *Allied Chemical Corp.*, 661 F.2d at 1061.

■ A vessel owner whose craft is sunk through no fault of his own is still under a statutory duty to remove the wreck, *Tennessee Valley*, 598 F.2d at 934, but he has the option of either raising the vessel himself and recovering the costs of removal from the party responsible for the sinking, *or* of abandoning the vessel to the United States, which then bears the responsibility for deciding upon removal; if the United States does remove, it may recover removal costs from the negligent party. *Tennessee Valley*, 598 F.2d at 934. If the non-negligent owner chooses the second option and abandons the vessel to the United States, he is liable neither for the cost of removal nor for any damages suffered by third parties as a result of the wreck. *Id.*

Thus, this circuit, while not diminishing in any way the stringent duty which the Wreck Act imposes, has viewed the owner's duty and response thereto in terms of negligence. If the owner diligently and in good faith endeavors to carry out that duty, this circuit has refused to find that he has breached a statutory duty. A party injured by the owner's failure to mark need look only to the owner for recovery. The owner may, however, absolve himself by showing that the failure to mark was not due to any fault whatever on his part. It is not freedom from negligence in causing the sinking that relieves the owner but only the scrupulous observance of his duty without fault to mark the vessel.

### B.

The non-negligent owner of a sunken vessel may choose to abandon his craft to the United States under the Wreck Act. *See Tennessee Valley*, 598 F.2d at 934. When he does so, the wreck becomes subject to removal by the government. 33 U.S.C. § 409. In determining the government's duty at that point, we have scrutinized other sections of the Wreck Act and 14 U.S.C. § 86.

Section 409 authorizes the Secretary of the Army, in his discretion, to remove a sunken vessel when the owner has failed to do so. *Buffalo Bayou Transportation Co. v. United States*, 375 F.2d 675, 677 (5th Cir. 1967). Section 414[4] likewise authorizes the Secretary, at his discretion, to break up, remove, sell or otherwise dispose of an abandoned wreck that is obstructing the navigation of a navigable river. 33 U.S.C. § 414. Furthermore, to protect navigation, 14 U.S.C. § 86[5] authorizes the Secretary of

---

**4.** 33 U.S.C. § 414 provides in pertinent part:

Whenever the navigation of any river, lake, harbor, sound, bay, canal, or other navigable waters of the United States shall be obstructed or endangered by any sunken vessel, boat, water craft, raft, or other similar obstruction, and such obstruction has existed for a longer period than thirty days, or whenever the abandonment of such obstruction can be legally established in a less space of time, the sunken vessel, boat, water craft, raft, or other obstruction shall be subject to be broken up, removed, sold, or otherwise disposed of by the Secretary of the Army at his discre-

tion, without liability of any damage to the owners of the same....

**5.** 14 U.S.C. § 86 provides in pertinent part:

The Secretary may mark for the protection of navigation any sunken vessel or other obstruction existing on the navigable waters or waters above the continental shelf of the United States in such manner and for so long as, in his judgment, the needs of maritime navigation require. *The owner of such an obstruction shall be liable to the United States* for the cost of such marking until such time as the obstruction is removed or its abandonment legally established or until such earlier time as the Secretary may deter-

Transportation to mark any sunken vessel or other obstruction existing on the navigable waters "in such manner and for so long as, in his judgment, the needs of maritime navigation require."

We have previously held that the government has no mandatory duty to remove "each sunken vessel" in navigable waters. *Buffalo Bayou Transportation,* 375 F.2d at 677. The statutory discretion granted to the government in determining whether to mark or remove a sunken wreck, however, requires that the Secretary utilize due care if he undertakes to mark or remove, and, perhaps, in making the decision whether or not to act. *Canadian Pacific (Bermuda) Ltd. v. United States,* 534 F.2d 1165, 1168 (5th Cir.1976).[6] The United States is also liable if it assumes a duty by its own regulation and negligently fails to perform that duty. *Transorient Navigators Co., S.A. v. M/S Southwind,* 714 F.2d 1358 (5th Cir. 1983). *Canadian Pacific* does not explicitly determine the scope of the government's duty, and, for purposes of determining the issue before us, we need not do so, in view of the allegations of the pleadings. In statutory context, the Wreck Act provisions merely authorize the United States to proceed either to mark or to remove the sunken vessel when the owner fails to do so, but they do not impose a mandatory duty on the government to remove the wreck, and, therefore, the United States is not liable to a third party for its failure to do so. *Buffalo Bayou Transportation Company v. United States,* 375 F.2d 675, 677 (5th Cir.1967). Indeed, until now, we have described the effect of the non-negligent owner's abandonment upon the United States only in terms of its granting the government the discretionary right to remove the vessel and recover the resulting costs thereof from the negligent tortfeasor:

> The owner of a vessel sunk without any negligence on his part is still subject to the statutory obligation to remove the

wreck, but is given an option: he may either raise the vessel himself and seek recovery of the expenses from the party responsible for the sinking, or he may abandon the vessel and allow the United States to bear the burden of removal and recovery of expenses from the negligent party.

*Tennessee Valley,* 598 F.2d at 934 (citations omitted).

II.

The statutory language is completely absent of any indication that either the failure of the owner to mark the wreck or, in the event of his failure to do so, the expressly discretionary power of the United States to mark or remove it, was intended to relieve a negligent tortfeasor of its liability for negligence causing damages to others. In holding that the negligent non-owner may be held liable for the costs of removing the wreck under ordinary tort principles, *Wyandotte, supra,* the Supreme Court has said that the Wreck Act's statutory language and legislative history is devoid of intent that, by the Act, "a party who negligently sinks a vessel should be shielded from personal responsibility." 389 U.S. at 200, 88 S.Ct. at 385.

We here review a judgment on the pleadings, which insofar as affirmed must be based upon the premise that under no set of circumstances could the owner have a claim against the upriver defendants directly, even if the owner and the United States were found free of fault; that, if the owner is found at fault, in no set of circumstances could it be found entitled to contribution from the upriver defendants; and that, if the United States is found at fault under no set of circumstances would it have a right to indemnity or contribution from the upriver defendant tortfeasors. The jurisprudence has recognized that, in exceptional circumstances, the United States may be

mine. . . . This section shall not be construed so as to relieve the owner of any such obstruction from the duty and responsibility suitable to mark the same and remove it as required by law.

6. The Suits in Admiralty Act, 46 U.S.C. § 742, under which the United States may be sued in admiralty, disavows governmental immunity in such suits.

held liable to third persons damaged by subsequent collision with an unmarked wreck. Most readily familiar is the circumstance when the United States has affirmatively undertaken to mark the wreck but thereafter negligently fails to do so (a premise of the cause of action here asserted against the United States). *Indian Towing Company v. United States,* 350 U.S. 61, 69, 76 S.Ct. 122, 126–27, 100 L.Ed. 48 (1955); *Greer v. United States,* 505 F.2d 90, 92 (5th Cir.1974). *See,* to similar general effect, *Canadian Pacific (Bermuda) Limited v. United States,* 534 F.2d 1165, 1169 (5th Cir. 1976) (rejecting a claim against United States for its negligence in maintenance of a waterway, *for the maintenance of which it was legally responsible,* because the United States had no prior knowledge of the existence of a shoal that caused an accident). As we have already noted, we do not undertake to determine whether the government is liable for negligently failing to mark a wreck, or is liable only if it undertakes to mark and does so negligently, because the facts are not yet developed.

### III.

Should either the owner or the United States be held liable, however, their negligence cannot be regarded, per se, as a superseding cause exonerating the negligent tortfeasors from any liability whatsoever for damages primarily resulting from their negligence, and under ordinary admiralty tort principles the causal initial negligence of the upriver defendants that contributed to the later accident should make them liable for their apportioned share of the loss. *See United States v. Reliable Transfer Co.,* 421 U.S. 397, 411, 95 S.Ct. 1708, 1715–16, 44 L.Ed.2d 251 (1975).

### A.

The district court interpreted a long line of Second Circuit cases [7] as holding that the only proximate cause of a collision between a wreck and another vessel was the failure to mark. *Nunley,* 513 F.Supp. at 724. The basis for this ruling was Judge Learned Hand's opinion in *Red Star Towing & Transportation Co. v. Woodburn,* 18 F.2d 77 (2d Cir.1927). We do not read *Red Star Towing* quite so broadly. Rather than discussing the *sole* proximate cause of a subsequent collision with the wreck, the Second Circuit held, in effect, that the owner's failure to mark was a superseding intervening cause which eliminated any liability on the part of the original tort-feasor, the party responsible for sinking the vessel. *See Red Star Towing,* 18 F.2d at 79. The court further discussed the potential fault of a vessel which collided with the wreck *after* being advised of the wreck's location. *Id.* Such a discussion would have been unnecessary if the *sole* proximate cause of the subsequent collision rested on the owner's failure to mark or remove the wreck.

### B.

To further its purpose of preventing obstructions in the nation's waterways, *see Wyandotte,* 389 U.S. at 201, 88 S.Ct. at 385, the Wreck Act places a duty on easily identifiable parties: the owner of a sunken vessel immediately to mark the wreck, and the United States in some cases to mark or remove the wreck. That duty establishes a standard of care applicable in ordinary maritime negligence actions. *The Bohemian Club,* 320 U.S. 462, 464 n. 1, 64 S.Ct. 225, 226 n. 1, 88 L.Ed. 168 (1943). This policy of squarely placing both the responsibility and the subsequent liability for negligent breach of that responsibility on the owner, or in some cases the United States, serves to ensure enforcement of the Wreck Act.

■ To the extent that the Second Circuit holds the owner liable, whether negligent or not in failing to mark, we disagree.[8]

---

**7.** The cases on which the district court relied are: *The Anna M. Fahy,* 153 F. 866 (2d Cir. 1907); *The R.J. Moran,* 299 F. 500 (2d Cir. 1924); *Red Star Towing & Transportation Co. v. Woodburn,* 18 F.2d 77 (2d Cir.1927); *Lowery v. The Tug Ellen S. Bouchard,* 128 F.Supp. 16 (N.D.N.Y.1955), *aff'd on opinion of trial court,* 229 F.2d 436 (2d Cir.1956).

**8.** ∕The cases relied upon by the district court all dealt with owners who were negligent in failing to mark the sunken vessels. This negligence

Since the time that decision was reached the rules governing allocation of responsibility for collision have been altered dramatically, by the institution of the principle of comparative fault, replacing the doctrine of major-minor fault. *See United States v. Reliable Transfer Co.,* 421 U.S. 397, 95 S.Ct. 1708, 44 L.Ed.2d 251 (1975). Because all of the duties imposed by the Wreck Act, whether on the party who causes the sinking, the owner, or the United States, are based on negligence, the failure of the owner, and in some circumstances the United States, to mark or remove a sunken vessel does not render either liable to the injured parties absent a breach of their respective duties as we have previously outlined them. Such a determination must take into consideration all of the relevant circumstances and is a finding of fact to be made by the district court in the first instance. The injured party may look solely to the owner, or, alternatively, the government, in the first instance. But neither may be held liable without a finding not only that a sunken vessel has not been marked, but also a finding that the failure to mark was the result of the negligence of the wreck owner, or in some circumstances, of the United States.

A corollary to our concern for enforcement of the Wreck Act is the inequity of requiring a non-negligent party to pay for the consequences of another's negligence. As the Supreme Court stated in *Wyandotte,* although in another context, there is no indication in the legislative history of the Wreck Act, in its predecessor statutes, or in non-statutory law that "Congress might have intended that a party who negligently sinks a vessel should be shielded from personal responsibility." *Wyandotte,* 389 U.S. at 200, 88 S.Ct. at 385. It further stated:

> The Government may ... seek an order that a negligent party is responsible

for rectifying the wrong done to maritime commerce by a § 15 violation. Denial of such a remedy ... would permit the result, extraordinary in our jurisprudence, of a wrongdoer shifting responsibility for the consequences of his negligence onto his victim. It might in some cases permit the negligent party to benefit from the commission of a criminal act. ·

*Wyandotte,* 389 U.S. at 204, 88 S.Ct. at 387. If both the government and the owner have satisfied their duties, the party who negligently caused the wreck is liable to the injured party. If either has failed to perform its duty, it is liable to the injured party, but may in turn seek contribution (or, perhaps, in the case of the United States, indemnity) from the party originally negligent. We do not perceive in what circumstances the owner might be entitled to indemnity. *See Loose v. Offshore Navigation, Inc.,* 670 F.2d 493, 502 (5th Cir.1982) ("the concepts of active and passive negligence have no place in a liability system that considers the facts of each case and apportions damages among joint tortfeasors according to the degree of responsibility of each party"). In view of the fact that this issue has not been briefed, we intimate no opinion concerning it.

### C.

The fact that the owner or the United States may later recoup from the party at fault does not demonstrably lessen their incentive promptly to mark the vessel and thus to minimize the possibility that they may be held solely liable or may be found not to have mitigated damages.

### IV.

To hold that failure to mark, whether or not negligent, constitutes a superseding

---

was discussed at lenth, and it could well be that had the owners not had notice of the sinking and a reasonable time in which to mark, the holdings would have been different. *See e.g., Red Star Towing & Transportation Co.,* 18 F.2d at 78–79; *The Tug Ellen S. Bouchard,* 128 F.Supp. at 24–25.

Moreover, in *Petition of Anthony O'Boyle,* 161 F.2d 966, 967 (2d Cir.1947), the Second Circuit found that although the owner had failed to mark a sunken vessel, such failure to mark did not constitute negligence. The court further held the grossly negligent sinker liable for subsequent damages sustained by a barge which collided with the wreck.

cause, completely absolving the party whose fault, however egregious, caused the sinking disregards the normal rules of causation and their role in defining legal liability. The problem is "one of whether the defendant is to be held liable for an injury to which he has in fact made a substantial contribution, when it is brought about by a later cause of independent origin, for which he is not responsible." Prosser, Law of Torts, 4th ed. 270. In essence, the issue is a question of the extent of the original obligation of the party who was first at fault. The problem, properly speaking, is not one of "causation" at all, "since it does not arise until causation is established. It is rather one of the policy as to imposing legal responsibility." *Id.*

Prosser explains when a person should be liable for his acts even though the later act of another contributes to injury.

> If the intervening cause is one which in ordinary human experience is reasonably to be anticipated, or one which the defendant has reason to anticipate under the particular circumstances, he may be negligent, among other reasons, because he has failed to guard against it; or he may be negligent only for that reason. Thus one who sets a fire may be required to foresee that an ordinary, usual and customary wind arising later will spread it beyond his own property, and therefore to take precautions to prevent that event.

*Id.* at 272.

A person who negligently sinks a vessel should foresee that the sunken vessel may remain unmarked either because the owner could not locate it despite diligent effort or because the owner negligently failed to locate it or failed even to search for it. In like fashion, it is foreseeable that the owner may abandon the wreck, and the United States may in turn fail to mark it. In such a case, "there is an intervening cause combining with the defendant's conduct to produce the result, and . . . the defendant's negligence consists in failure to protect the plaintiff against that very risk." *Id.* at 273. "The risk created by the defendant may include the intervention of the foreseeable negligence of others. As we have seen above, the standard of reasonable conduct may require the defendant to protect the plaintiff against 'that occasional negligence which is one of the ordinary incidents of human life, and therefore to be anticipated.'" *Id.* at 274.

The Restatement (Second) of Torts sets forth principles for determining whether an intervening force supersedes prior negligence. They are:

> (a) the fact that its intervention brings about harm different in kind from that which would otherwise have resulted from the actor's negligence;
>
> (b) the fact that its operation or the consequences thereof appear after the event to be extraordinary rather than normal in view of the circumstances existing at the time of its operation;
>
> (c) the fact that the intervening force is operating independently of any situation created by the actor's negligence, or, on the other hand, is or is not a normal result of such a situation;
>
> (d) the fact that the operation of the intervening force is due to a third person's act or to his failure to act;
>
> (e) the fact that the intervening force is due to an act of a third person which is wrongful toward the other and as such subjects the third person to liability to him;
>
> (f) the degree of culpability of a wrongful act of a third person which sets the intervening force in motion.

*Id.* § 442. Section 447 continues:

> The fact that an intervening act of a third person is negligent in itself or is done in a negligent manner *does not* make it a superseding cause of harm to another which the actor's negligent conduct is a substantial factor in bringing about, if
>
> (a) the actor at the time of his negligent conduct should have realized that a third person might so act, or
>
> (b) a reasonable man knowing the situation existing when the act of the third person was done would not regard it as

highly extraordinary that the third person had so acted, or

(c) the intervening act is a normal consequence of a situation created by the actor's conduct and the manner in which it is done is not extraordinarily negligent.

*Id.* § 447.

By these criteria failure to mark does not, per se, "supersede" the liability of the party at original fault. Indeed in *Allied Chemical Corporation v. Hess Tankship Co.,* 661 F.2d 1044 (5th Cir.1981), this court recently rejected a contention that subsequent negligence would, as a superseding cause, exculpate a non-owner negligent sinker (Great Fortune) from causal responsibility for the subsequent collision with a sunken vessel. We there noted, although by way of dicta (since we affirmed on another ground), that "[a] subsequent negligent act does not excuse prior negligence." *Allied Chemical, supra,* 661 F.2d at 1060.

The upriver defendants argue for a rule that the consequences of their negligence stop with their liability for the damages to the sunken vessel itself and for the costs of marking and removing it. They argue that, since they themselves had no duty to mark the wreck, they should not be liable for damages caused by subsequent collisions with the unmarked wreck. Such a rule may indeed be supportable by sound reasons of public policy with regard to allocating risks of harm in maritime commerce.

The issue before us, however, is whether the Wreck Act imports such a rule—and we find no statutory authority for such a rule, nor that such a rule is either jurisprudentially or logically implicated by the reasons for the owner's liability for his negligent failure to mark or remove. The Wreck Act itself refers only to the duty of an owner to mark a vessel. It does not refer to any liability that subsequently attaches, because of the failure to mark the sunken wreck, whether the liability be that of the owner or of a negligent non-owner who causes the wreck. The Act does not manifest any intent to preempt any remedy against a tortfeasor for damages resulting from an unmarked wreck.

The remedies and procedures specified by the statute have been held by the United States Supreme Court as "not intended to be exclusive," at least not insofar as the United States government is concerned. *Wyandotte, supra,* 389 U.S. at 200–01, 88 S.Ct. at 385. The courts have, in fact, permitted recovery against a tortfeasor by remedies beyond those specified by the statute. These include recovery from the negligent party for the expenses incurred in marking and removing the wreck, *Id.* at 204, 88 S.Ct. at 387, *Tennessee Valley Sand & Gravel Co. v. M/V Delta,* 598 F.2d 930, 934 (5th Cir.1979), and no reason is shown why, under the statutory language and purposes, the negligent non-owner should not similarly be held liable for damages resulting from a subsequent collision with a vessel initially sunk through his negligence.

General principles of maritime tort also support liability, for at least apportioned damages resulting from post-sinking collisions with the wreck, on the part of the wrong-doer who negligently caused it. "[N]egligent conduct on the navigable waters that causes loss to another constitutes a maritime tort." *United States v. M/V Big Sam,* 681 F.2d 432, 443 (5th Cir. 1982). Here, where for purposes of the judgment on the pleadings negligence is conceded, the causal initial negligence of the upriver defendants that contributed to the later accident would ordinarily require them to bear their apportioned share of the loss, should the negligence of either the United States or of the COMBI have contributed to the accident. *United States v. Reliable Transfer Co.,* 421 U.S. 397, 411, 95 S.Ct. 1708, 1715–16, 44 L.Ed.2d 251 (1975). We do not find either in the statutory language or in the legislative history or purposes of the Wreck Act—which in terms only places *criminal* liability upon those who negligently cause a wreck in the navigable waters, as well as upon a vessel's owner who fails to mark it—any legislative purpose to relieve the tort-feasor who caused the wreck of his *civil* liability for the damages consequent to his negligence. Perhaps the failure of other parties to mark the

sunken wreck may in some circumstances be a superseding cause of the subsequent collision, or perhaps the tort-feasor's fault may be minimal compared with the fault of the non-marking parties. These, however, are issues that may not be decided by a judgment on the pleadings alone, as in this case.

This reasoning can also be seen in the case law in other circuits,[9] including the Second Circuit on which the district court relied. *See Petition of Anthony Boyle,* 161 F.2d 966, 967–68 (2d Cir.1947) and *supra* note 8.

## V.

### A.

 Having delineated the duties under the Wreck Act and its relationship to a normal maritime negligence action, we turn to the case at bar and the district court's ruling.

A close reading of the pleadings in the six consolidated cases indicates that pending before the court at the time that judgment on the pleadings was granted were the following claims against the upriver defendants: claims of the DAUNTLESS's owners for damages resulting from the striking of the COMBI by the DAUNTLESS,[10] claims of the COMBI owners for indemnity, contribution, apportionment of fault or judgment for the plaintiffs in the consolidated action[11] and claims of the United States for indemnity and contribution in the event judgment was entered against the United States.[12] In addition, there was a tender of the upriver defendants as parties liable to the DAUNTLESS under Rule 14(c).

Thus the question properly before the court was whether under any set of facts postulated the upriver defendants could be held liable to any of the parties for any damages resulting from the striking of the COMBI by the DAUNTLESS.

We first note that the COMBI alleged that it was not negligent in either causing the original sinking of the barge or in failing diligently to search for the sunken vessel in order to mark and remove it.[13] On appeal, however, the upriver defendants, urging affirmance of the judgment on the pleadings, argue that for the issue of indemnity or contribution to arise, the COMBI must be adjudged liable for damages in the first instance. Thus for the claims of indemnity or contribution against the upriver defendants to survive, COMBI must

---

**9.** *See Lane v. United States,* 529 F.2d 175 (4th Cir.1975); *Ingram Corp. v. Ohio River Co.,* 505 F.2d 1364 (6th Cir.1974); *American Commercial Barge Line Co. v. Eagle Marine Industries, Inc.,* 1977 A.M.C. 475 (E.D.Mo.1976).

**10.** The DAUNTLESS claimants sought to dismiss these claims without prejudice one week after the hearing on the motion for a judgment on the pleadings. The motion to dismiss was granted six weeks after judgment on the pleadings was granted. Even though the DAUNTLESS's claims against the upriver defendants were dismissed without prejudice, and even though judgment had already been granted for the upriver defendants on the pleadings, the upriver defendants did not contest the granting of this motion.

**11.** In its third-party complaint against the upriver defendants, the COMBI owners, petitioners for limitation of liability or exoneration, sought indemnity, contribution, or apportionment of fault from the upriver defendants in the event that they were held liable in any of the consolidated cases. They likewise sought judgment in favor of the plaintiffs in the consolidated action against the upriver defendants under Fed.R.

Civ.P. 14(c). The plaintiffs in the consolidated action when the third-party complaint was filed were the DAUNTLESS's owners and captain, Tenneco, and the United States.

**12.** The motion for judgment on the pleadings did not seek to dismiss the claims of the United States for the cost of removing the sunken COMBI barge which was accomplished after the DAUNTLESS accident.

**13.** The upriver defendants likewise claimed that liability for the initial sinking of the COMBI barge had never been established, although that case had been settled, and denied any liability for the initial sinking. The defendants moreover denied that the DAUNTLESS struck the sunken COMBI barge or that the damages to the DAUNTLESS resulted from striking the sunken barge. For purposes of the motion, however, we may assume that the upriver defendants caused the 1974 sinking of the COMBI barge, that the DAUNTLESS did in fact hit the sunken COMBI barge, and that all damages resulted from that striking.

necessarily be assumed to have been negligent. This likewise applies to the claims of the United States for indemnity or contribution. Because the pleadings of both the United States and COMBI deny all wrong doing, there can be no relief to either in the form of indemnity or contribution. Although these points may be well taken, at least as far as they go, this argument ignores COMBI's third-party request for judgment for the plaintiffs under Fed.R. Civ.P. 14(c) as well as the original claims of the DAUNTLESS owners which were pending before the court.

By finding that the sole proximate cause of the subsequent collision with the wreck is the failure to mark, the district court effectively placed strict liability on the owner to fulfill this duty. As we noted in Part II, neither our reading of the Second Circuit cases on which the district court relied nor the jurisprudence of this circuit would support such a holding.

The issues in this case cannot be resolved as a matter of law on the present record. If the district court determines that either the COMBI or the United States, or both, were without fault in failing to mark or remove the wreck, and that the upriver defendants negligently caused the sinking of the COMBI, the upriver defendants may be directly liable to the plaintiffs. If the COMBI or the United States, or both, are determined to be at fault, the district court, applying ordinary principles of tort law, should determine whether their negligence acts as a superseding cause absolving the upriver defendants of liability. If the district court finds that the intervening negligence, if any, of the United States or the COMBI could have been "reasonably anticipated" by the upriver defendants, it should apportion liability among all the defendants according to their comparative fault. The damages for which the upriver defendants may be held liable are not limited to the

cost of marking or removing the wreck, but extend to the damages caused by the collision of the DAUNTLESS with the COMBI.[14]

Accordingly, we REVERSE the district court's holding and REMAND the case for further proceedings consistent with this opinion.

JERRE S. WILLIAMS, Circuit Judge, with whom GEE, Circuit Judge, joins, dissenting:

The opinion for the Court has stated the procedural posture of this case. It has also carefully defined the single issue which is before us. The opinion's assumption, however, of the facts upon which the issue is to be resolved and the legal conclusion to be drawn from those facts is faulty and leads to an incorrect result.

In this opinion I do not undertake to spell out the full legal support for my views. This was done in my dissenting opinion to the panel decision in this case. *Nunley v. M/V DAUNTLESS COLOCOTRONIS,* 696 F.2d 1141, 1147 (5th Cir.1983).

We properly assume in the decision of this case that the upriver defendants, enumerated in note 2 of the opinion for the Court, p. 457, *supra,* were guilty of negligence in causing the original maritime accident in 1974. In that accident, the barge owned by COMBI sank when the barges upriver broke loose and in floating down the Mississippi River hit the COMBI barge, tore it loose from its moorings, and sank it. We also must assume that neither the owner of the barge, COMBI, nor the United States Government were negligent in the original maritime accident leading to the wreck of the COMBI barge.

The opinion for the Court is correct as well in recognizing that the resolution of the issue in dispute is dependent upon the application of the Wreck Act, §§ 15, 16, 19,

14. Although the upriver defendants may ultimately be held liable for damages to the DAUNTLESS, such liability will not automatically flow from the fact that the upriver defendants were negligent in causing the sinking of the COMBI. The DAUNTLESS must, as must all parties in this type of litigation, prove that the negligence was the proximate cause of the accident; the same would be true with respect to the negligence of the COMBI or the United States in failing to perform their duties under the Wreck Act.

and 20 of the Rivers and Harbors Act of 1899 (33 U.S.C. §§ 409, 411, 412, 414, 415). It is the Court's interpretation of the Act and its application to the maritime events involved in this case which compels this dissent. The opinion for the Court interprets the Act in a way which is contrary to every single case which has litigated the issue which is before this Court.

While the text of the critical statutory provision, § 15 of the Act, 33 U.S.C. § 409, is not a model of clarity in draftsmanship, it yields the proper interpretation that the responsibility for eliminating the hazard to navigation created by a sunken vessel lies wholly upon the owner of the vessel or the United States Government regardless of whose negligence caused the sinking. Just eight years after the passage of the Wreck Act, the Second Circuit in *THE ANNA M. FAHY*, 153 F.2d 866 (2d Cir.1907), so interpreted the Act. It placed the full burden to mark and if necessary remove a sunken vessel on the owner of the vessel or on the United States Government. The law as to this issue was then developed in the Second Circuit through a series of decisions which have never been challenged by a court decision until this case. While it is true that all of the law interpreting the Wreck Act on this issue was developed in the Second Circuit, it remained as accepted law throughout the United States until the *DAUNTLESS COLOCOTRONIS* case which is before us.

The most commonly quoted statement of the rule is found in Judge Learned Hand's decision in *Red Star Towing and Transportation Co. v. Woodburn*, 18 F.2d 77 (2d Cir.1927). This was a case just as the case *sub judice* in which the issue was whether a tugboat which negligently caused a sinking could still be held liable by the vessel that hit the submerged wreck as opposed to the sole liability flowing from the owner of the submerged wreck or the United States Government. As a remarkable factual strengthening to the ruling of the Court, the tugboat company which caused the negligent sinking is the same one that successfully achieved recovery against the owner when another one of its tugboats ran into the submerged wreck just a few days later. Yet the Court applied the rule of statutory liability on the owner without liability on the perpetrator of the negligent sinking.

In the course of the opinion Judge Learned Hand in referring to the Wreck Act said:

> The statute establishes a new duty arising after the sinking, and demanding as its condition nothing but the fact and notice of it to the wreck owner. Though the tug be a guilty party to the original mishap, the duty is not ordinarily upon her to provide against further loss; the statute imposes the duty upon the owner alone, and absolves the tug from subsequent consequences, which conceivably might otherwise be thought to be the proximate result of her original fault. *Id.* at 79.

The opinion for the Court is correct in stressing that the negligent upriver defendants were liable for the *costs* of marking and removing. And this is all that *Wyandotte Transportation Co. v. United States*, 383 U.S. 191, 88 S.Ct. 379, 19 L.Ed.2d 407 (1967), held which is relevant to this case. Obviously this holding follows the statutory scheme and is consistent with the established rule. The fallacy is in going beyond the sinking to make the negligent non-owners responsible for damage to the vessel which later collides with the sunken barge. For this there is no authority in the law. No prior holding exists which supports this view taken by the Court. All of the detailed reasoning of the opinion of the court skirts around this fundamental fact.

This case involves a judgment on the pleadings, but this does not restrict the application of the settled principles of the Wreck Act. We need not speculate what the situation might be if the collision with the submerged vessel took place shortly after the sinking. The pleadings establish that in this case the collision took place more than three years after the sinking. If either the owner or the United States Government had carried out its obligations under the Wreck Act, there would have

been no collision of the DAUNTLESS CO-LOCOTRONIS with the sunken barge. It would have been marked or removed and at the expense of the negligent upriver defendants. But under the Wreck Act the obligation of the upriver defendants does not extend beyond that liability. It does not reach the consequent damage in a later collision with the sunken vessel because of the failure of the owner or the United States Government to carry out its statutory obligations.

The Wreck Act is obscure with respect to the right of the owner to abandon the wreck, thereby forcing the obligation upon the government to take over marking and removing if the sunken vessel is an obstruction to navigation. But the dispute between the owner and the United States Government as to their respective obligations under the statute is not before us. The upriver defendants in pleading their defense did not have to establish whether it was the owner or the United States Government which was liable. All they had to plead was that under the Wreck Act they were not.

The assumption by the opinion of the Court that the liability of the owner or the United States Government under the Wreck Act is based upon negligence is not correct. It is quite clearly not based upon negligence as the statute itself reveals. The opinion of the Court rewrites the statute when it bases its interpretation on negligence and upon the later rationalization based upon the development of comparative negligence.

The Wreck Act creates a statutory obligation, as we held in *Allied Chemical Corp. v. Hess TankShip Co.,* 661 F.2d 1044, 1061 (5th Cir.1981). Then as a matter of defense, and defense only, the owner (and it can be assumed the United States Government) can come in and prove that the location of the wreck was not known and that an attempt to locate the wreck was diligently pursued. *Ibid.* By way of analysis, it perhaps could be said that establishing this defense requires the proof of non-negligence in the attempt to locate the wreck.

In any event, this defense of no statutory liability if the owner or the government cannot find the wreck is a proper gloss added to the Wreck Act by judicial interpretation. But it is far off target to claim it establishes that the obligation to mark or to remove the wreck placed upon the owner or the United States Government is an obligation grounded in negligence. It is strictly a statutory obligation regardless of negligence.

The opinion of the Court finds no justification for a holding of "strict liability" upon the owner and seems to view strict liability with distaste. One cannot read the Wreck Act without recognition that it calls for strict liability upon the owner to carry out its obligations without regard to its fault. Further, the opinion rests its conclusion in part upon a later development in the law—comparative negligence. Let it be said that an equally noteworthy development in the law is the broad acceptance of the concept of "strict liability". The Wreck Act is an early example of a strict liability statute. But we can hardly view with dismay today the application of strict liability nor justify a novel and tortured statutory interpretation to avoid the application of strict liability.

If the owner and the government both could prove that they never knew of the location of the sunken barge and that they made diligent and necessary good faith efforts to locate it, they could not be held liable under the Wreck Act. In that narrow circumstance the holding of the majority of the Court would be correct. If it was impossible for the owner or the government to obey the Act, they could not be held liable for violating it. This possibility is not present in this case because the owner's brief reveals the likelihood of some knowledge, and the government does not deny knowledge of the location of the sunken barge.

The majority opinion goes far beyond these narrow circumstances under which the owner or government would not be liable by introducing a concept of negligence into the requirements of marking and

removal under the Wreck Act. Instead, escape from liability under that Act is limited wholly to the defense of proving a diligent and good faith attempt to comply with the Act by locating the wreck. That exception no more creates a base of negligence in the Wreck Act than would the defense of non-ownership by our alleged owner. Another analogy would be a failure to file an income tax return because of a disputed conclusion that there was no obligation to do so. The right to try to establish such a defense does not convert the basic filing obligation to an issue of negligence.

The Wreck Act has a significant public purpose. It places the full and total responsibility of protecting navigation from the hazards of sunken vessels on the owners of those vessels or the United States Government. These two entities wholly failed to carry out their responsibility under the statute. They now undertake to shift that responsibility to the upstream defendants. To allow them to do so is a negation of important congressional policy designed to eliminate such collisions. Allowing the owner or the government to shift liability back to the upstream defendants undercuts the statutory purpose, wholly independent of negligence, of forcing the owner or the government to carry out the obligation to abate navigational hazards.

I cannot accept the judicial legerdemain which creates this new rule of law and overturns an established statutory interpretation. The district court was applying not only the established law but also the manifest congressional policy in holding that the collision of the DAUNTLESS COLOCOTRONIS with the submerged COMBI barge was caused solely by the failure of the owner or the United States Government to carry out statutory obligations recognized for over three-quarters of a century. The decision of the district court should be affirmed.